# Exhibit A

Penny L. Koepke
pkoepke@hoalow.biz
**MAXWELL & MORGAN, P.C.**
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Classes*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-08042-DGC |
| *Plaintiff,* | ~~FIRST~~SECOND **AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Freeway Insurance Services America, LLC, an Illinois limited liability company, | |
| *Defendant.* | |

Plaintiff Brenda Whittaker ("Whittaker" or "Plaintiff") brings this ~~First~~Second Amended Class Action Complaint ("Complaint") against Defendant Freeway Insurance Services America, LLC ("Freeway Insurance" of "Defendant") to stop its practice of placing repeated unsolicited, prerecorded telemarketing calls to consumers whose telephone numbers are registered on the National Do Not Call Registry and to obtain redress for all persons similarly injured by its conduct. Plaintiff seeks an award of statutory damages to the members of the Classes, plus court costs and reasonable attorneys' fees. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon

1

information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Whittaker is an individual who resides in Cottonwood, Yavapai County, Arizona.

2. Defendant Freeway Insurance Services America, LLC is an Illinois limited liability company whose principal place of business is located at 7711 Center Ave., Suite 200, Huntington Beach, California 92647.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or the "Act"), a federal statute. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Classes consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

4. The Court has personal jurisdiction over Defendant and venue is proper in this District because it regularly conducts business in this District and a substantial part of the events giving rise to the claims asserted here occurred in this District.

## COMMON ALLEGATIONS OF FACT

5. Defendant Freeway Insurance is an insurance agency that specializes in providing non-standard auto insurance for new and high-risk drivers. Freeway Insurance sells insurance policies to consumers nationwide.

6. Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and to generate leads for its insurance policies and related insurance products and services, Defendant conducted (and continue to conduct) a wide scale telemarketing campaign and repeatedly sends unsolicited, prerecorded telemarketing calls, including to telephone numbers which appear on the

1 ~~national~~National Do Not Call Registry.

2       7.    ~~At~~Notably, Freeway Insurance's website requests that consumers enter their zip code to start an auto insurance quote. Once a zip code is entered, Freeway Insurance requests that consumers input information and agree to be contacted by Freeway Insurance via artificial or prerecorded voice, which includes a disclosure that Freeway Insurance may leave artificial or prerecorded voicemail messages. Specifically, Freeway Insurance asks consumers to agree to the following:

> By clicking the 'Continue' button, I agree to the Freeway Insurance Services America, LLC Privacy Policy and Terms of Use , and I give consent to share my information with Freeway Insurance Services America, LLC's Affiliates, External Marketing Partners, and their successors and assigns. For all of these, I also give my express written consent to be contacted at the mobile phone number provided above for marketing purposes by call, text, or automated telephone dialing system, including with an artificial or prerecorded voice, which may leave a message. Message and data rate may apply. Message frequency varies. Text HELP for help and STOP to cancel at any time. I understand that I am providing this consent even if my telephone number is currently listed on a federal, state, internal, or corporate Do-Not-Call list. I understand that I do not have to agree to receive these types of calls or text messages as a condition of purchasing any goods or services. This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

      8.    This language further demonstrates that Freeway Insurance places prerecorded telemarketing calls and leaves prerecorded voicemail messages to numbers registered on the National Do Not Call Registry. However, Plaintiff never accessed Freeway Insurance's website and did not agree to be contacted.

      ~~7.~~9.    Indeed, at no time did Defendant obtain prior express consent from Plaintiff or the class members orally or in writing to place the calls at issue.

      10.    Additionally, based on online reviews from its employees, Freeway Insurance operates a national call center that makes a high volume of outbound calls. Freeway Insurance's parent company's website also refers to a national call center that that solicits sales and service in all 50 states and includes job openings on behalf of

3

Freeway Insurance for call center representatives.

~~8.~~11.   The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act") and its implementing regulations, 47 C.F.R. § 64.1200, *et seq.* were enacted to protect consumers from unauthorized telemarketing calls exactly like those alleged in this Complaint: (1) calls placed using "an artificial or prerecorded voice" ("prerecorded calls") to telephones without first obtaining consent, and (2) calls placed without prior express written invitation, permission, or consent to persons who listed their phone numbers on the Do Not Call Registry. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, it also intentionally and repeatedly violated the TCPA.

~~9.~~12.   At all times material to this Complaint, Defendant was and is fully aware that unsolicited telemarketing calls are being placed to consumers' telephones through its own efforts and/or that of its agents.

~~10.~~13. To the extent any third parties placed the calls, the third parties acted on behalf of Defendant, for Defendant's benefit, and with Defendant's approval. Further, Defendant ratified the conduct by accepting the benefits of the telemarketing campaign.

~~11.~~14. By placing the unsolicited calls at issue in this Complaint, Defendant caused Plaintiff and the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls as well as a loss of value realized for any monies that consumers paid to their carriers for the receipt of such calls. Furthermore, the calls interfered with and interrupted Plaintiff's and the other class members' use and enjoyment of their phones, including the related data, software, and hardware components. Defendant also injured the Plaintiff and class members by causing wear and tear on their phones.

~~12.~~15. On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized, prerecorded telemarketing calls to persons registered on the Do Not Call Registry and an award of statutory damages to the class members, together with

pre- and post-judgment interest, costs, and reasonable attorneys' fees.

**FACTS SPECIFIC TO PLAINTIFF**

~~13.~~16. Plaintiff Whittaker is the primary and customary user of the cellular telephone number ending in 9679. Whittaker registered the telephone number ending in 9679 on the national Do Not Call Registry on December 19, 2017.

~~14.~~17. Plaintiff's cellular telephone number ending in 9679 is used for residential purposes and is not associated with a business. <u>Indeed, this is the only telephone that Plaintiff possessed at all times relevant to this Complaint. As such, this phone was and remains the primary means of reaching Plaintiff for personal matters.</u>

~~15.~~18. On January 5, 2022, Plaintiff received an unsolicited telemarketing call from Freeway Insurance. The call was placed from the telephone number (928) 272-1099.

~~16.~~19. On January 7, 2022, Plaintiff received another unsolicited telemarketing call from Freeway Insurance from the same telephone number.

~~17.~~20. On January 8, 2022, <u>at 12:34 p.m.,</u> Plaintiff received another unsolicited telemarketing call from Freeway Insurance from the same telephone number. After not answering the call, Freeway Insurance left Plaintiff a voicemail message, which featured the use of a prerecorded or artificial voice. <u>The prerecorded voicemail states as follows: "Hi, this is Freeway Insurance, sorry I missed you. I'm calling you back about your insurance quote request and look forward to saving you on your car insurance. Thank you for calling us back at this number."</u>

21. <u>When Plaintiff and her counsel listened to the voicemail, they were easily able to determine that it was a prerecorded message. The message did not have the cadence of live person. Further, the voicemail was generic in nature and did not include any information regarding either the employee calling or Plaintiff.</u>

22. <u>Moreover, identical prerecorded voicemails with the same voice and</u>

5

transcript can be found online.[1]

~~18.~~23. Plaintiff received another unsolicited telemarketing call from Freeway Insurance on January ~~9~~8, 2022, at 4:35 p.m., from the telephone number (928) 272-1099. Plaintiff placed a return call to the 1099 number to confirm that the caller was Freeway Insurance.

~~19.~~24. The purpose of the calls was to solicit Plaintiff to purchase Defendant's auto insurance policies as well as related insurance products and services.

25.   On February 11, 2022, during Plaintiff's pre-suit investigation, Val Stiefel, counsel for Freeway Insurance, provided further information regarding the calls placed to Plaintiff. Mr. Stiefel confirmed that Freeway Insurance placed the calls at issue to Plaintiff. Further, Mr. Stiefel clarified that Freeway Insurance was calling regarding auto insurance. This information further confirms that Freeway Insurance, itself, placed the calls outlined above for the purpose of selling its auto insurance policies.

~~20.~~26. On information and belief, Defendant has placed additional calls to Plaintiff.

~~21.~~27. At no time did Whittaker ever consent to receive calls from Defendant. Further, Whittaker has never expressed any interest in Defendant's insurance policies, products, or services.

~~22.~~28. Whittaker also has no prior relationship with Freeway Insurance.

~~23.~~29. To redress these injuries, Whittaker, on behalf of herself and the Classes of similarly situated individuals, brings suit under the TCPA, which prohibits unsolicited prerecorded calls and unsolicited telemarketing calls to telephone numbers registered on the national Do Not Call Registry. On behalf of the Classes, Whittaker seeks an injunction requiring Defendant to cease all unauthorized calling activities, and an award

---

[1] *See* https://directory.youmail.com/phone/747-244-4474; https://directory.youmail.com/phone/510-405-5604; https://directory.youmail.com/phone/325-231-3435.

of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

~~24.~~30. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Classes:

**Prerecorded Call Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action to the date notice is sent to the Class: (1) Defendant, or a third person acting on behalf of Defendant, called; (2) on the person's cellular telephone; (3) for the purpose of selling Defendant's products and services; (4) using an artificial or prerecorded voice; and (5) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call ~~the~~ Plaintiff.

**DNC Registry Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action to the date notice is sent to the Class: (1) Defendant, or a third person acting on behalf of Defendant, called more than one time on his/her telephone; (2) within any 12-month period; (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express invitation, permission, or consent in the same manner as Defendant claims it supposedly obtained prior express invitation, permission, or consent to call ~~Whittaker, or for whom it did not obtain prior express written invitation, permission, or consent~~Plaintiff.

~~25.~~31. The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded

7

persons. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

26.32. **Numerosity:** The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant placed calls to thousands of consumers who fall into the defined Classes. Members of the Classes can be identified through reference to Defendant's business records.

27.33. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

28.34. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

29.35. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant's placed the calls at issue using an artificial or prerecorded voice;

    (c)    Whether Defendant systematically placed unsolicited telemarketing calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

    (d)    Whether any third party made the calls and, if so, whether Defendant is liable for such calls;

    (e)    Whether the Plaintiff and the other members of the Classes are

entitled to statutory damages; and

(f) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

30.36. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

31.37. **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendant has acted or refused to act on grounds substantially similar towards all members of the Classes to render certification of the Classes for final injunctive relief and corresponding declaratory relief appropriate under Rule 23(b)(2).

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227, *et seq***
**(On Behalf of Plaintiff and the Prerecorded Call Class)**

32.38. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

9

33.39. Defendant made unsolicited and unwanted prerecorded telemarketing calls to cellular telephone numbers belonging to Plaintiff and the other members of the Prerecorded Call Class—without their prior express written consent—in an effort to generate leads for Freeway Insurance's products and services.

34.40. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

35.41. Defendant made the calls using an artificial or prerecorded voice or similar technology.

36.42. By making prerecorded, unsolicited telemarketing calls to Plaintiff and members of the Prerecorded Call Class's cellular telephones without prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

37.43. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Prerecorded Call Class suffered actual damages in the form of monies paid to receive the unsolicited prerecorded telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

38.44. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Prerecorded Call Class.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227, *et seq***

**(On Behalf of Plaintiff and the DNC Registry Class)**

39.45. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

40.46. 47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

41.47. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c).

42.48. 47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

43.49. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

11

The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

44.50. Defendant and/or its agent(s) violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, multiple telephone solicitations to telephone subscribers like

Plaintiff and the DNC Registry Class members who registered their respective cell phone numbers on the National DNC Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

45.51. Here, Defendant and/or its agent(s) placed more than one unsolicited telemarketing call to Whittaker and the other members of the DNC Registry Class within a 12-month period without having prior written express consent to send such calls.

46.52. Each such call was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

47.53. Whittaker and the other members of the DNC Registry Class did not provide consent to receive such telemarketing calls from Defendant or its agents.

48.54. Neither Defendant nor its agents have any record of consent to place such telemarketing calls to Plaintiff or the other members of the DNC Registry Class.

49.55. Defendant violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls to be placed for telemarketing purposes to wireless telephone subscribers, such as Plaintiff and the members of the DNC Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a do not call policy and a list of persons who request not to receive telemarketing calls.

50.56. Additionally, on information and belief, Defendant fails to maintain a written do not call policy that is available on request. On further information and belief, Defendant fails to train its employees and personnel involved in telemarketing in the existence and use of its do not call policy or do not call list.

51.57. As a result of Defendant's conduct as alleged herein, Whittaker and the members of the DNC Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

52.58. To the extent Defendant's misconduct is determined to have been willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of

statutory damages recoverable by Whittaker and the members of the DNC Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Classes, prays for the following relief:

A. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes and appointing her attorneys as Class Counsel;

B. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C. An award of trebled damages if willfulness is shown;

D. An order declaring Defendant's calls, as set out above, violate the TCPA;

E. An injunction requiring Defendant to stop placing calls to consumers registered on the National Do Not Call Registry absent prior express consent;

F. An award of pre-judgment interest;

G. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

H. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: ~~July 18~~<u>August 22</u>, 2022

**BRENDA WHITTAKER**, individually and on behalf of all others similarly situated,

By: <u>/s/ Taylor T. Smith</u>
One of Plaintiff's Attorneys

Penny L. Koepke
pkoepke@hoalow.biz

14

4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*pro hac vice

*Counsel for Plaintiff and the Putative Classes*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on August 22, 2022.

                        /s/ Taylor T. Smith