**BERGIN, FRAKES, SMALLEY & OBERHOLTZER, PLLC**
Brian M. Bergin (AZ Bar No. 016375)
Brent Demmitt (AZ Bar No. 033820)
4343 East Camelback Road, Suite 210
Phoenix, Arizona 85018
Telephone: 602.888.7855
Email: bbergin@bfsolaw.com
Email: bdemmitt@bfsolaw.com

**MANATT, PHELPS & PHILLIPS, LLP**
Christine M. Reilly (*Pro Hac* Application Forthcoming)
A. Paul Heeringa (*Pro Hac* Application Forthcoming)
2049 Century Park East, Suite 1700
Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
Email: creilly@manatt.com
Email: pheeringa@manatt.com

*Attorneys for Defendant*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker,<br>individually and on behalf of all others<br>similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Freeway Insurance Services America,<br>LLC,<br><br>Defendant. | No. 3:22-cv-08042-DGC<br><br>**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT, AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED** |

**<u>INTRODUCTION</u>**

Plaintiff's Second Amended Complaint (Dkt. 15, "SAC") represents her ***third*** failed attempt to state a plausible claim for relief against Freeway Insurance Services America, LLC ("Freeway"). Plaintiff should not be afforded a fourth opportunity.

Indeed, like its predecessors, Plaintiff's SAC alleges, in a conclusory and inconsistent fashion and without adequate factual support, that Freeway violated the Telephone Consumer Protection Act ("TCPA"). These claims still rest on four ill-described calls—***none of which Plaintiff answered*** but which she concludes resulted in her receiving one "prerecorded" voicemail—allegedly made without her consent <u>either</u> by Freeway <u>or</u> by unidentified third parties to her cell phone number, which is purportedly on the National "Do Not Call" ("DNC") Registry. Yet, despite her multiple amendments, Plaintiff still fails to plead sufficient facts in accordance with federal pleading standards supporting an inference that Freeway bears any legal responsibility for the alleged calls in this case, let alone that those calls violated the TCPA in the first place. Worse, the new "facts" that Plaintiff added to her SAC actually support the opposite inference—*i.e.,* that ***she solicited and consented to receiving the alleged calls*** and they were ***not "solicitations"*** but instead provided information in response to her request for an insurance quote. No amount of repleading can cure that fatal defect. Therefore, the entire SAC should be dismissed <u>with prejudice</u> pursuant to Fed. R. Civ. P. 12(b)(6) for at least the following reasons:

**<u>First</u>**, Plaintiff fails to plead any facts demonstrating a violation of the DNC provisions in Section 227(c) of the TCPA. That is because, *inter alia*, the alleged calls were not "telephone solicitations" within the meaning of the TCPA on their face but were merely informational. Count II should be dismissed in its entirety on this basis alone.

**<u>Second</u>**, Plaintiff still fails to plead sufficient facts supporting an inference that the voicemail she allegedly received was "prerecorded" as opposed to a live caller's message, as required for a claim under Section 227(b) of the TCPA. Courts have widely held that, to avoid dismissal of such a claim, plaintiffs must plead plausible non-conclusory facts regarding the "tenor, nature, or circumstances" of the call, beyond parroting the statutory

language. Here, Plaintiff did not. Thus, Count I must be dismissed in its entirety.

**Third**, Counts I and II should be dismissed for the additional reason that it is apparent from the face of the SAC that Plaintiff consented to the alleged calls. In fact, Plaintiff's new allegations and reasonable inferences suggest that the alleged calls were made in response to her request for a quote on Freeway's website, despite Plaintiff's allegations to the contrary. Myriad courts have dismissed TCPA complaints that, like Plaintiff's SAC here, contain allegations suggesting that the plaintiff consented to receiving the calls at issue, even where the plaintiff contradictorily alleges he or she did not consent. This Court should rule similarly here and also dismiss Counts I and II on this basis because, as one court aptly noted, "***consent is a complete defense*** to [any] TCPA claim." *Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*, 2020 WL 12432034, at *4 (C.D. Cal. July 6, 2020) (citations omitted, emphasis added).

**Fourth**, Counts I and II also fail because Plaintiff still does not plead facts supporting a viable theory of TCPA liability—*i.e.*, that Freeway: (i) <u>itself</u>, not a third party, "physically placed" all the alleged calls, as required for direct TCPA liability; or (ii) had a common law agency relationship with any third parties who did, as required for vicarious TCPA liability. Courts routinely dismiss entire TCPA complaints on these bases. This Court should too.

**Finally**, while the SAC is ripe for dismissal in its entirety for multiple reasons, the class allegations remain so facially improper that the classes are uncertifiable as pled. Thus, if they survive dismissal, those allegations should be stricken under Fed. R. Civ. P. 12(f) and/or 23 before the parties and Court waste needless time on them. The Court should also strike Plaintiff's improper request for "attorneys' fees and costs" under Rule 12(f).

## APPLICABLE LEGAL STANDARDS

### I.   Fed. R. Civ. P. 12(b)(6): Failure to State a Claim For Relief

Rule 12(b)(6) provides for dismissal for failing to state a claim for relief. Any claim brought in federal court mandates the pleading of sufficient actual facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id*. A "formulaic recitation of the elements" of a claim is also insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "[t]o survive a Rule 12(b)(6) dismissal,

1    a complaint must allege enough *specific facts* to provide both 'fair notice' of the particular

2    claim being asserted and 'the grounds upon which it rests.'" *Massey v. Biola Univ., Inc.*,

3    2020 WL 2476173, at *5 (C.D. Cal. Apr. 10, 2020), *report and rec. adopted,* 2020 WL

4    2468765 (May 13, 2020) (quoting *Twombly*, 550 U.S. at 555 & n.3 (emphasis added)).

5            Under Rule 12(b)(6), the Court must "accept[] factual allegations in the [SAC] as true

6    and construe[] [them] in the light most favorable" to Plaintiff. *Colony Cove Properties, LLC*

7    *v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011). But the Court need <u>not</u> accept as true

8    "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

9    inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012).

10   **II.**    **<u>Fed. R. Civ. P. 12(f) and 23: Striking Facially-Improper Class Allegations</u>**

11           Under Rule 12(f), federal district courts may strike from a pleading "any redundant,

12   immaterial, impertinent, or scandalous matter." Along these lines, it is well accepted in the

13   Ninth Circuit that class allegations may be properly stricken at the pleadings stage prior to

14   discovery pursuant to Rules 12(f) and 23 (particularly in TCPA cases) where, as here, "the

15   allegations [in the complaint] make it obvious that classwide relief is not available."

16   *American Western Door & Trim v. Arch Specialty Ins. Co.*, 2015 WL 1266787, at *8 (C.D.

17   Cal. Mar. 18, 2015). *See also Sena v. Uber Techs. Inc.*, 2016 WL 1376445, at *7-8 (D. Ariz.

18   Apr. 7, 2016) (granting pre-discovery motion to strike class allegations); *Stokes v.*

19   *CitiMortgage, Inc.*, 2015 WL 709201, at *4-6 (C.D. Cal Jan. 16, 2015) (striking class

20   allegations with prejudice that "require[d] individualized inquiries into each putative class

21   member"); *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *1-5 (C.D. Cal. Dec.

22   21, 2016) (striking class allegations in a TCPA case which "necessarily involve[d]

23   individualized inquiries" and for being "an impermissible fail-safe class"); *Dixon v.*

24   *Monterey Fin. Servs., Inc.*, 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22, 2016) (striking

25   proposed "fail-safe" TCPA class). Courts have also recognized that permitting a facially

26   uncertifiable class or classes, like Plaintiff's in this case, to proceed past the pleadings stage

27   and into discovery would place an undue burden and expense upon litigants and the judicial

28   system alike. *See, e.g., Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11,

2015) (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

**ARGUMENT**

**I.      THE ENTIRE SAC SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TCPA.**

In Count I (*see* SAC ¶¶ 38-44), Plaintiff invokes Section 227(b) of the TCPA which, along with its related implementing regulations, provides *inter alia* that no person shall "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) & (2); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). In Count II (*see* SAC ¶¶ 45-58), Plaintiff invokes the National DNC Registry provision in Section 227(c) of the TCPA which, along with its related implementing regulations, prohibits *inter alia* the "initiat[ion]" of more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As shown below, Plaintiff still fails to plead actual ***facts*** supporting all these essential elements and relies instead on bald conclusions, which is insufficient.

**A.      Plaintiff Fails to Plead Facts Supporting a DNC Violation.**

We begin with Plaintiff's original sole DNC claim (now Count II). Despite a motion to dismiss, this claim still falls flat. A TCPA DNC violation requires a "telephone solicitation" which, in turn, is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. §§ 64.1200(c)(2) & (f)(15). *See also Gulden v. Consol. World Travel Inc.,* 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) ("[T]he determination of whether a call was a prohibited solicitation [under the TCPA] should turn on 'the purpose of the message.'") (quoting *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012)).

Here, Plaintiff's DNC claim lacks facts supporting this essential element for two key reasons:

**First**, informational calls responding to a consumer's inquiry or relating to a transaction, like those now alleged in the SAC, do not qualify as a "telephone solicitation." *See, e.g., Warnick v. Dish Network LLC*, 301 F.R.D. 551, 558 n.3 (D. Colo. 2014) ("[O]nly telephone solicitations ... are governed by the national [DNC] list. Informational calls are not included in the [DNC] type of calls."); *Williams-Diggins v. Republic Servs.*, 2019 WL 5394022, at *1 (N.D. Ohio Apr. 25, 2019) ("Informational, non-solicitation telephone calls to numbers on the [DNC] registry do not violate the TCPA."). Without facts demonstrating receipt of a "telephone solicitation," Plaintiff's DNC claim fails. *See, e.g., Horton v. Tarrant Cnty. Hosp. Dist.*, 2022 WL 702536, at *1-3 (N.D. Tex. Feb. 4, 2022), *report and rec. adopted*, 2022 WL 620950 (Mar. 3, 2022) (dismissing on this basis); *Eggleston v. Reward Zone USA LLC*, 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) (same).

As applied here, not only did Plaintiff not answer any of the four alleged calls according to her SAC, but also the content of the only alleged call she describes plainly indicates it was not a "telephone solicitation" on its face. Rather, Plaintiff confirms that call was providing information in response to an inquiry about insurance quotes. *See* SAC ¶ 20 ("I'm **calling you back** about your **insurance quote request**….") (emphasis added). That the caller purportedly stated that he/she "look[ed] forward to saving [Plaintiff] on [her] car insurance" (*id.*) and Plaintiff's self-serving (and inaccurate) characterizations of her pre-suit communications with one of Freeway's in-house counsel (*id.* ¶¶ 24, 25) are of no moment, as the clearly informational content of the alleged call speaks for itself. *See, e.g., Horton*, 2022 WL 702536, at *1-3 (dismissing DNC claim where content of the alleged text was informational on its face, notwithstanding conclusory allegation it was a solicitation in the complaint); *see also Vallianos v. Schultz*, 2019 WL 4980649, at *2-4 (W.D. Wash. Oct. 8, 2019) (dismissing DNC claim **with prejudice** where the texts at issue were not "telephone solicitations" on their face, even though defendant was also selling products on the website linked in messages); *Gulden,* 2017 WL 3841491, at *3 (dismissing where plaintiff "d[id] not describe the calls, but simply aver[red] that the calls were made 'for the purpose of soliciting

1  for [defendant's] products or services[,]" which was "nothing more than a conclusion, which

2  *Twombly* specifically prohibits") (citing 550 U.S. at 555);[1] *Eggleston*, 2022 WL 886094, at

3  *7 (ruling similarly as to § 227(c) claims). This defect alone warrants dismissal of Count II.

4        **Second**, a viable DNC claim requires ***more than one*** "telephone solicitation" in a 12-

5  month period to survive dismissal under Rule 12(b)(6). *See* 47 U.S.C. § 227(c)(5); *Nicholas*

6  *Greene v. Select Funding, LLC*, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021). Because

7  Plaintiff only provides the purported content of ***one*** alleged call (*see* SAC ¶¶ 18, 19, 23), her

8  DNC claim fails—even assuming *arguendo* that the one call she describes was a "telephone

9  solicitation" (and it was not). Indeed, as one court dismissing on this basis aptly noted: "[A]t

10  best, Plaintiff has only alleged one telephone solicitation. But more than one telephone

11  solicitation is needed to trigger a violation. Plaintiff, however, has not alleged the content of

12  the other calls that would allow the Court to reasonably infer that these other calls were

13  solicitations." *Greene*, 2021 WL 4926495, at *5. This further supports dismissal of Count II.

14        **B.    Plaintiff Fails to Plead Artificial/Prerecorded Voice Use.**

15        As to Count I, which is a belated claim not contained in the original complaint,

16  Plaintiff's SAC does little (if anything) to cure her failure to adequately allege that the one

17  voicemail message she purportedly received was "prerecorded," as opposed to left by a live

18  caller, in support of her Section 227(b) claim. To survive dismissal here, Plaintiff "must

19  include some factual allegations beyond 'the call had a prerecorded [or artificial] voice.'"

20  *Smith v. Pro Custom Solar LLC*, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021). Federal

21  courts—including in this District—routinely dismiss TCPA complaints lacking sufficient

22  allegations "regarding the tenor, nature, or circumstances of the alleged calls" and that

23  "merely proffer[] the content of the message and conclusory allege[] that Defendant utilized

24  a pre-recorded message." *Manopla v. Sansone Jr.'s 66 Automall*, 2020 WL 1975834, at *2

25  (D.N.J. Jan. 10, 2020); *see also Winters v. Quicken Loans Inc.,* 2020 WL 5292002, at *4 (D.

---

[1] *Gulden* was a "junk fax" case under § 227(b)(1)(C), and the court considered whether the at-issue fax constituted an "unsolicited advertisement" within the meaning of the TCPA (*id.*), which has a similar definition as a "telephone solicitation." *See* 47 C.F.R. § 64.1200(f)(16).

Ariz. Sept. 4, 2020); *Rahimian v. Rachel Adriano and Juan Martinez, Inc.,* 2022 WL 798371, at \*2-3 (D. Nev. Mar. 16, 2022); *Caruso v. Cavalry Portfolio Svcs., et al.,* 2019 WL 4747679, at \*4 (S.D. Cal. Sept. 30, 2019). While courts do not expect "technical specifications" about the delivery mechanism for messages, they have uniformly required plaintiffs to plead sufficient supporting factual details from which a "prerecorded message," as opposed to a live human speaking, could be inferred. *See, e.g., Johansen v. Vivant, Inc.,* 2012 WL 6590551, at \*3 (N.D. Ill. Dec. 18, 2012) ("[A] TCPA plaintiff could [for example] describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded."); *Oparaji v. Home Retention Corp.*, 2022 WL 987560, at \*7-8 (E.D.N.Y. Jan. 11, 2022) (ruling similarly). In this case, Plaintiff did not.

As applied here, Plaintiff's SAC again mostly just parrots statutory language, but it provides little (if any) actual ***facts*** to support a Section 227(b) claim. For example, Plaintiff alleges the message "did not have the cadence of a live person" (SAC ¶ 21), which effectively amounts to just another bald legal conclusion that the call was "prerecorded." While she does allege that the content of the message was "generic" in nature because it did not mention her or the caller's name (*id.*), she does <u>not</u> (1) allege she received any identical messages, (2) describe how the voice sounded (*e.g.*, "robotic"), or (3) allege she tried to interact with the speaker and did not receive a response—all of which might sometimes suggest a call was prerecorded. *See Johansen* and *Oparaji*, *supra*. If such facts existed, Plaintiff could (and should) have alleged them in prior pleadings by now. That she did not is quite telling.

Further, Plaintiff cites the TCPA disclosure language on Freeway's website which, according to her, suggests Freeway "may leave artificial or prerecorded voicemail messages." SAC ¶ 7. Based on that, she concludes the disclosure "language further demonstrates that Freeway … places prerecorded telemarketing calls and leaves prerecorded voicemail messages to numbers registered on the National [DNC] Registry." *Id.* ¶ 8. This does not help Plaintiff. That Freeway ***may*** leave prerecorded messages does not support an

inference ***she*** *actually received* one here. Based on this allegation and the sum total of her prerecorded message allegations, it appears that Plaintiff merely assumed that the voicemail she purportedly received, resulting from one call she did not answer, was a prerecorded message. Speculation does not state a claim, and cannot survive dismissal. *See McNabb v. U.S. Dep't of the Army*, 623 F. App'x 870, 872 (9th Cir. 2015) (citing *Twombly* and *Iqbal*).

Moreover, as shown below, Freeway's robust disclosure on its website directly contradicts the SAC's conclusory allegations that Freeway makes "unsolicited" prerecorded calls without "consent."[2] Plaintiff cannot have it both ways. *See Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 872, n.8 (S.D. Tex. 2020) ("'Where [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.'") (quoting *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016)).

Additionally, Plaintiff's new conclusory allegation that "identical" messages "with the same voice and transcript can be found online" (SAC ¶ 22 & fn.1 (citing directory.youmail.com)) does not save her from dismissal, either. Courts recognize the utter lack of efficacy of anonymous internet posts, such as those in Plaintiff's SAC. *See, e.g., Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.*, 2013 WL 1196948, at *13 (W.D. Wash. Mar. 25, 2013) ("The majority of complaints are from anonymous Internet users that have posted on various blogs and forums online ... designed to facilitate negative feedback from disgruntled customers or even competitors, who can write multiple reviews across multiple forums ... [this] evidence is not persuasive[.]"). Courts in the TCPA context have also held that nearly identical allegations are not only unpersuasive for Rule 12(b)(6) purposes but also

---

[2] Plaintiff does not include the URL where this language appears on Freeway's website in her SAC, which is on its ***quote consent form***. *See* https://rate.freewayinsurance.com/ (last visited Sept. 6, 2022). Freeway respectfully requests that the Court take judicial notice of this webpage. *See Baron v. HyreCar Inc.*, 2022 WL 2102993, at *2 (C.D. Cal. Feb. 16, 2022) (Under Rule 12(b)(6), "a court may take judicial notice of matters referred to in the complaint, but not attached, where the document's authenticity is not contested and the complaint necessarily relies on them.") (citing *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)). *See also Carroll v. California*, 2022 WL 2785777, at *3 (C.D. Cal. July 14, 2022) (courts need not accept as true conclusory allegations contradicted by documents referred to in the complaint or matters properly subject to judicial notice) (citations omitted).

*properly stricken* as "'[s]uperfluous historical allegations'" under Rule 12(f). *Hicks v. Alarm.com*, 2020 WL 9261758, at *6 (E.D. Va. Aug. 6, 2020) (striking references to the same website Plaintiff cites, directory.youmail.com) (quoting *Woo v. Home Loan Grp., L.P.*, 2007 WL 6624925, at *5 (S.D. Cal. Jul. 27, 2007)). This Court should rule similarly here.

### C.   Plaintiff's Allegations Show She Provided Consent for the Calls.

The SAC is also subject to dismissal because Plaintiff provided her consent to be called. Section 227(b) of the TCPA prohibits, *inter alia*, prerecorded calls made to a mobile phone without "prior express consent" of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). This consent standard applies to informational or transactional calls, like those alleged here. *See, e.g., Dolemba v. Kelly Servs., Inc.,* 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017) (citing *In re Rules & Reg's Implementing the TCPA*, 30 F.C.C. Rcd. 7961, 7964 (July 10, 2015)); *MacKinnon v. Hof's Hut Rests., Inc.*, 2017 WL 5754308, at *1–3 (E.D. Cal. Nov. 28, 2017) (citing various authorities); *Wick v. Twilio Inc.,* 2016 WL 6460316, at *2-3 (W.D. Wash. Nov. 1, 2016).[3] Once established, "'[p]rior express consent is a complete defense to [any] TCPA claim.'" *Loyhayem,* 2020 WL 12432034, at *4 (quoting *Reardon v. Uber Techs., Inc*., 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015)). Similarly, a call is <u>not</u> a "telephone solicitation" for a DNC claim where the called party provides her "prior express invitation or permission" (*i.e.,* consent) to the caller. 47 C.F.R. §§ 64.1200(c)(2) & (f)(15).

In this regard, it is well-accepted that courts may rule on this issue at the pleadings stage under Rule 12(b)(6) where the allegations in the complaint and/or judicially-noticeable evidence suggest that the plaintiff consented to receiving the calls at issue—*even where the plaintiff expressly alleges a lack of consent. See, e.g., Dolemba*, 2017 WL 429572, at *3-4

---

[3] The Ninth Circuit recently clarified that, in applying the TCPA's definition of "prior express consent," it has "adopted the FCC's interpretation of the text: that *a person who knowingly releases his number consents to be called at that number,* and that consent is 'effective' where the responsive messages relate to the same subject or type of transaction as the messages that led to the response." *Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538, 541 (9th Cir. 2022) (citing *In re Rules & Regs. Implementing the TCPA*, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992) (emphasis added)). In other words, "prior express consent" need <u>not</u> be written and can be simply obtained where a consumer provides his or her number to a caller as part of a business transaction or inquiry, and they receive a responsive message. *See, e.g., Pietzak v. Microsoft Corp.*, 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015).

1    (dismissing where allegations showed plaintiff provided consent); *MacKinnon,* 2017 WL

2    5754308, at \*2-3 (same); *Pietzak*, 2015 WL 7888408, at \*2 (same); *Loyhayem,* 2020 WL

3    12432034, at \*4 (same); *Barton v. LeadPoint Inc.*, 2021 WL 6772555, at \*4 (W.D. Wash.

4    Nov. 3, 2021), *report and rec. adopted in part*, 2022 WL 123352 (Jan. 13, 2022) (same).

5         In this case, Plaintiff alleges she "never accessed Freeway Insurance's website and

6    did not agree to be contacted." SAC ¶ 8. But this is ***directly contradicted*** by allegations and

7    materials subject to judicial notice and, thus, need not be accepted as true. *See Carroll* and

8    *Cicalese*, *supra*; *Hernandez*, *infra*. Indeed, Plaintiff goes to great lengths to quote from

9    Freeway's ***quote consent form*** located on its website. *See* https://rate.freewayinsurance.com/

10   (last visited Sept. 2, 2022). Plaintiff avers that Freeway's website (1) invites consumers to

11   enter their zip code (among other information, including their name, email address, and

12   phone number) and (2) includes a robust TCPA consent "disclosure" in which consumers

13   clearly "agree to be contacted." SAC ¶ 7. Plaintiff then quotes ***verbatim*** Freeway's extensive

14   TCPA consent disclosure. *Id*. The sole purpose of the consent form is clear—for consumers

15   to be contacted at the telephone numbers provided for an insurance quote. If Plaintiff did not

16   submit this consent form, then presumably she would not be aware of its existence and she

17   would not have quoted from it extensively in her third pleading. The mere fact that Plaintiff

18   relies on it belies her allegations that she did not consent to be contacted.

19        Further, Plaintiff alleges that she received a single voicemail message stating, "I'm

20   ***calling you back about your insurance quote request***…." SAC ¶ 20 (emphasis added). This

21   allegation only makes sense if Plaintiff submitted the form and asked to be contacted for an

22   insurance quote. In other words, her allegations—even assuming *arguendo* they are true—

23   support the inference that Plaintiff filled out the consent form on Freeway's website and then

24   received a call back in connection with her request to be contacted.

25        Given these allegations, the Court need not infer that Plaintiff did not consent just

26   because she says so, as she is only entitled to ***reasonable*** inferences in her favor under Rule

27   12(b)(6). *See Wilson,* 668 F.3d at 1145, n.4; *see also Scott v. Harris,* 550 U.S. 372, 378

28   (2007). The allegation that she did not consent to being contacted is not reasonable in light

of the totality of her allegations. *See also Cafasso v. Gen. Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1056 (9th Cir. 2011) (to assess the reasonableness of an inference under Rule 12(b)(6), the court must draw on its own judicial experience and common sense, and consider obvious alternative explanations) (citing *Iqbal* and *Twombly*). Instead, the only reasonable inference to be drawn here is that Plaintiff was called back to provide her information in response to her request for a quote and, to obtain that quote, she provided her telephone number and consent to be called. Under binding authority, that is more than sufficient to show that Plaintiff consented to be contacted.[4] *See, e.g., Moskowitz,* 37 F.4th at 541. Thus, based on her own allegations, judicially-noticeable evidence, and reasonable inferences to be drawn therefrom, the SAC should be dismissed in its entirety under Rule 12(b)(6).

### D. Plaintiff Fails to Sufficiently Allege Direct or Vicarious TCPA Liability.

Despite its amendments, Plaintiff's SAC still lacks sufficient facts supporting a plausible theory of liability under the TCPA in this case, which further warrants its dismissal.

There are two potential theories of liability under the TCPA: (1) direct liability (*i.e.,* directly making the call) and (2) vicarious liability (*i.e.,* having an agency relationship with a third party caller). *See, e.g., Rogers v. Postmates Inc.,* 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)); *Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (citing *Abante Rooter & Plumbing v. Farmers Grp., Inc.,* 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). As to the former, it is well accepted that direct TCPA liability applies only to parties that "make" or "initiate" calls, which means "***tak[ing] the steps necessary to physically place***" a call. *Sheski,* 2020 WL 2474421, at *2 (citing *In re Dish Network, LLC,* 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 (2013) (emphasis added)); *see also Naiman v. Freedom Forever, LLC,* 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) (applying same rule to § 227(c)).

---

[4] Even if the alleged prerecorded call was an "advertisement" or "telemarketing," requiring "prior express written consent" under Section 227(b) of the TCPA, the extensive TCPA disclosure on Freeway's website clearly satisfies this standard. *Reardon,* 115 F. Supp. 3d at 1093-97; 47 C.F.R. §§ 64.1200(a)(2)-(3), §§ 64.1200(f)(1), (9) & (13). This also defeats Plaintiff's DNC claim. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (defining lesser standard for "prior express invitation or permission" under Section 227(c) of the TCPA).

However, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call is not sufficient to allege a [direct] TCPA [liability] claim" or avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019); *see also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (ruling similarly). Instead, courts in this Circuit and elsewhere routinely dismiss TCPA complaints at the pleadings stage on direct liability grounds that, like Plaintiff's SAC, lack sufficient facts supporting an inference the ***defendant itself, not unidentified third parties, picked up the phone and physically called the plaintiff directly***. *See, e.g., Rogers*, *Pascal*, *Abante*, *Sheski*, *Naiman*, *Frank*, *supra*; *Wick v. Twilio Inc.*, 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) ("The FCC recognizes that merely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product" for direct TCPA liability). Courts in this District have ruled similarly. *See, e.g., Gulden,* 2017 WL 3841491, at *3.

As applied here, Plaintiff alleges the content of one call she admits she did not answer, and claims it originated from a phone number ending in 1099 and resulted in her receiving a voicemail stating "this is Freeway Insurance." SAC ¶ 20. She further alleges (but does not describe the content of) three other calls purportedly originating from the same number, and asserts she "placed a return call to the 1099 number to confirm that the caller was Freeway Insurance." *Id.* ¶¶ 18, 19, 23. However, tellingly, she never alleges this actually resulted in her connecting Freeway with the calling number. At best, Plaintiff mischaracterizes a pre-suit conversation with one of Freeway's in-house counsel, which she vaguely concludes "confirmed that Freeway Insurance placed the calls at issue[.]" *Id.* ¶ 25. Yet despite all this, Plaintiff still equivocates throughout her SAC, thereby again ***conceding she does not know who actually physically placed the calls***, stating that "[t]o the extent any third parties placed the calls, the third parties acted on behalf of Defendant, for Defendant's benefit, and with Defendant's approval." *Id.* ¶ 23; *see also id.* ¶¶ 12, 30, 50, 51, 53, 54 (alleging unidentified third party "agents" who were "acting on behalf" of Freeway may have physically placed some or all the calls). Such plainly "[c]ontradictory allegations" not only fail to state a direct TCPA liability claim but also "are inherently implausible, and [thus] fail to comply with

12

Rule 8, *Twombly*, and *Iqbal*" and cannot avoid dismissal under Rule 12(b)(6). *Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). *See also Bank v. Philips Elecs. N. Am. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (calls "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" is "too conclusory to state a plausible [direct liability] claim"); *Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, at *1-5 (N.D. Cal. Mar. 28, 2018) (no direct liability even though the texts at issue identified defendant and included a link to its website); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) ("[a]t the very minimum, plaintiff must allege in her compliant that defendant made each call that she seeks to hold it liable for" or face dismissal). As such, the SAC should also be dismissed on this basis.

Though it is unclear if she was, to the extent Plaintiff was also attempting to allege vicarious TCPA liability here, she failed. Indeed, courts in the Ninth Circuit have also consistently dismissed TCPA claims premised on vicarious liability at the pleading stage that, like Plaintiff's, lack sufficient non-conclusory facts establishing a common agency relationship with (the "essential ingredient" of which is "control" over) a third party agent. *See, e.g., Jones v. Royal Admin. Servs., Inc*., 887 F.3d 443, 450 (9th Cir. 2018); *Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015); *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017); *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017); *Meeks,* 2018 WL 1524067, at *5; *Rogers,* 2020 WL 3869191, at *8. *See also In re Monitronics Int'l, Inc., TCPA Litig*., 223 F. Supp. 3d 514, 520 (N.D. W.Va. 2016), *aff'd sub nom*., 885 F.3d 243 (4th Cir. 2018) ("[I]n order to prove actual agency [for vicarious TCPA liability], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, ***more specifically, the manner and means of the solicitation campaign that was conducted***.") (emphasis added).

In this case, Plaintiff does <u>not</u> allege the "essential ingredient" of control, as is required to state a vicarious TCPA liability claim. Instead, she merely asserts, in an entirely conclusory fashion and without supporting facts, that unnamed third party "agents" may have placed the calls at issue. *See, e.g.,* SAC ¶¶ 13, 50, 51, 53, 54. Merely employing such

"agency" buzzwords does not suffice to allege vicarious TCPA liability in this Circuit. *See, e.g., Naiman*, 2019 WL 1790471, at *4 (rejecting similar "agency" allegations as "wholly conclusory" and dismissing TCPA claims under §§ 227(b) and (c)). And because Plaintiff fails to adequately plead facts supporting direct <u>or</u> vicarious liability, <u>both</u> of her TCPA claims should be dismissed under Rule 12(b)(6). *See, e.g., Gulden,* 2017 WL 3841491, at *3 (ruling that "***[b]ecause [caller] identity is a necessary element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims***.") (emphasis added).

## II.     THE SAC SHOULD BE DISMISSED WITH PREJUDICE.

Courts have recognized it is proper to dismiss with prejudice under Rule 12(b)(6) where a plaintiff had at least one chance to amend but failed to cure the previous complaint's deficiencies. *E.g., Frame v. Cal-W. Reconveyance Corp.,* 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions"). Here, Plaintiff already had <u>two</u> chances to amend but did not cure all the fatal pleading defects with her SAC despite having the benefit of Freeway's prior motion detailing those defects when amending (*see* Dkt. 12).

## III.    ALTERNATIVELY, THE COURT SHOULD STRIKE PLAINTIFF'S FAULTY CLASS AND OTHER ALLEGATIONS UNDER RULES 12 AND 23.

Should Plaintiff's fatally-flawed TCPA claims survive dismissal, the Court should nevertheless strike Plaintiff's faulty class allegations for at least the following reasons:

### A.     Plaintiff's Class Allegations are Classically "Fail-Safe."

A proposed class definition is impermissibly "fail-safe" where "a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010). *See also Kamar v. Radioshack Corp.*, 375 F.App'x 734, 736 (9th Cir. 2010) (defining fail-safe classes). Rule 12(f) motions to strike fail-safe class definitions are routinely granted in TCPA cases at the pleadings stage. *See, e.g.*, *Pepka*, 2016 WL 8919460, at *3 (striking fail-safe TCPA class definition where it would require the Court to engage in

a merits determination to determine membership); *Dixon,* 2016 WL 4426908, at *2 (same).

In this case, both of Plaintiff's proposed class definitions remain classically "fail-safe" because membership in each depends on the merits of the underlying TCPA claims and, as such, they should be stricken. As discussed above, to successfully plead a claim under Section 227(b) of the TCPA (as alleged in Count I) or under Section 227(c) of the TCPA (as alleged in Count II), Plaintiff and the putative class members must show Freeway initiated violative calls without having obtained the proper measure of prior "consent"—*i.e*., "prior express consent," "prior express written consent," or "prior express invitation or permission." *See* discussion at pp. 9-11, and fns. 3-4, *supra; see also* 47 C.F.R. §§ 64.1200(f)(5) & 64.1200(f)(15) (a call is not a "telephone solicitation" under §227(c) where the parties have an "established business relationship"). All these terms have precise legal definitions under the TCPA. *Id.* Another threshold liability issue in this case is whether Freeway is directly or vicariously liable under the TCPA. *See* discussion at pp. 11-14, *supra*.

Yet, despite this, Plaintiff's proposed "Prerecorded Call Class" definition is defined, in pertinent part, to include persons (1) who received calls "from Defendant, or a third person ***acting on behalf*** of Defendant" (*i.e.,* whether Freeway is directly or vicariously liable under the TCPA) and (2) "for whom Defendant claims it obtained ***prior express written consent*** in the same manner as Defendant claims it obtained ***prior express written consent*** to call the Plaintiff." SAC ¶ 30 (emphasis added). Plaintiff's proposed "DNC Registry Class" definition is similarly defined, in pertinent part, to include persons (1) who received calls "from Defendant, or a third person ***acting on behalf*** of Defendant" (*i.e.,* direct or vicarious liability) and (2) "for whom Defendant claims it obtained ***prior express invitation, permission, or consent*** in the same manner as Defendant claims it supposedly obtained ***prior express invitation, permission, or consent*** to call Plaintiff." *Id.* (emphasis added). Each of these is undoubtedly a critical merits-based inquiry going directly to the heart of the underlying TCPA claims in this case, and there is no objective way for the Court to determine who is a class member given these "fail-safe" classes. Thus, Plaintiff's proposed classes should be stricken on this basis alone. *See, e.g., Pepka*, 2016 WL 8919460, at *3 (striking § 227(b)

class at the pleadings stage defined to include calls not made "with the recipient's prior express consent" as fail-safe); *Dixon*, 2016 WL 3456680, at *4 (ruling similarly); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (ruling similarly as to "prior express permission or invitation" under § 227(c)).

### B.      Common Questions of Law and Fact Do Not Predominate.

Plaintiff's proposed class definitions should also be stricken for the additional reason that common questions of law and fact would not predominate. Fed. R. Civ. P. 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" To meet this requirement, "common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 469 (N.D. Cal. 2014) (quoting *Berger v Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (abrogated on other grounds by *Microsoft v. Baker*, 137 S. Ct. 1702 (2017))). Courts in and beyond the Ninth Circuit have widely recognized that proposed class definitions that would require individualized factual and legal inquiries, like Plaintiff's here, are properly stricken at the pleadings stage on this basis. *See, e.g.*, *Pepka*, 2016 WL 8919460, at *4; *Stokes*, 2015 WL 709201, at *4-6; *Eldridge v. Cabela's Inc.,* 2017 WL 4364205, at *7-11 (W.D. Ky. Sept. 29, 2017); *Cholly v. Uptain Grp., Inc.,* 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017).

As applied here, Plaintiff vaguely alleges in her SAC that she received multiple calls from Freeway <u>or</u> unidentified "agents." *See* discussion at pp. 11-14, *supra*. Assuming *arguendo* Plaintiff is correct, how the many different parties she suggests were possibly involved may have ***obtained*** "consent" may vary widely, as would how the putative class members may have ***provided*** their "consent" to those different third parties or even the same party (*e.g*., through Freeway's website or by other means). The context and circumstances under which different consumers might ***revoke*** their consent to the same entity or different entities, or whether their revocation was "clear" and unambiguous enough to be legally

1    effective,[5] can naturally vary widely by individual and entity, too.

2           Indeed, Plaintiff's own allegations once again demonstrate that class treatment would

3    be improper. Even assuming that Plaintiff did not consent to be contacted, Plaintiff's

4    allegations show that **at least some putative class members provided consent by filling out**

5    **the consent form on Freeway's website**. *See* SAC ¶ 7. Therefore, whether any calls were

6    made without the "consent" of Plaintiff and the putative class members is <u>not</u> a common

7    question of law or fact that can be resolved by generalized proof across the entire class for

8    both proposed classes in a single adjudication. Rather, it would necessitate individualized

9    factual and legal inquires on this critical issue, among others. *See Pepka* and *Stokes*, *supra*.

10   Thus, the proposed classes should be stricken on this basis too, as it is readily apparent from

11   her SAC that Plaintiff cannot satisfy the predominance requirement under Rule 23(b)(3).[6]

12          **C.     Plaintiff is Not Entitled to Fees and Costs Under the TCPA.**

13          Finally, in her prayer for relief (SAC at p. 14), Plaintiff seeks to recover "reasonable

14   attorneys' fees and costs." But the TCPA "is not a fee shifting statute" and "[t]hus, an award

15   of attorney's fees and costs is not available for [alleged] TCPA violations." *Perrigo v.*

16   *Premium Asset Servs., LLC*, 2015 WL 4597569, at *8 (D. Nev. July 28, 2015). As such, the

17   request for fees and costs, which are unavailable as a matter of law here, should be stricken.

18   *See Volman v. Sony BMG Music Ent.,* 2008 WL 11338008, at *2 (C.D. Cal. July 17, 2008).

19                                    **CONCLUSION**

20          For all the reasons stated above, this Court should grant this Motion in its entirety.

21   _____

     [5] *See, e.g., Barnett v. Bank of Am., N.A.,* 2021 WL 2187950, at *5 (W.D.N.C. May 28, 2021)
22   (discussing the legal standard for effectively revoking consent under the TCPA).

     [6] Plaintiff also purportedly seeks certification under Rule 23(b)(2) for injunctive relief. *See*
23   SAC ¶ 30. However, Supreme Court has made clear that, "[i]n the context of a class action
     predominantly for money damages"—like in a TCPA class action—Rule 23(b)(2)
24   certification is ***impermissible.*** *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2259 (2011)
     (citing *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985)). *See also Balschmiter v. TD*
25   *Auto Fin. LLC*, 303 F.R.D. 508, 516 (E.D. Wis. 2014) ("[P]ermitting certification under Rule
     23(b)(2) in TCPA cases would impermissibly allow 'the monetary tail to wag [] the
26   injunction dog.'") (quoting *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005)).
     Additionally, since Plaintiff's class definitions are properly stricken for the reasons above,
27   all remaining "class" allegations (*see, e.g.,* SAC ¶¶ 3, 9, 11, 14, 15, 29, 31-37, 39, 42-44, 50,
     51, 53-55, 57, 58 and Prayer) are superfluous and, therefore, are properly stricken as well.
28   *See, e.g., Flores v. City of Cal. City,* 2019 WL 1934016, at *6 (E.D. Cal. May 1, 2019).

                                        17

Dated: September 6, 2022            Respectfully submitted,

                                    By: /s/ *Brent Demmitt*

                                    **BERGIN, FRAKES, SMALLEY &
                                    OBERHOLTZER, PLLC**
                                    Brian M. Bergin (AZ Bar No. 016375)
                                    Brent Demmitt (AZ Bar No. 033820)
                                    4343 East Camelback Road, Suite 210
                                    Phoenix, Arizona 85018
                                    Telephone: 602.888.7855
                                    Email: bbergin@bfsolaw.com
                                    Email: bdemmitt@bfsolaw.com

                                    *Local Counsel for Manatt, Phelps & Phillips, LLP*


                                    **MANATT, PHELPS & PHILLIPS, LLP**
                                    Christine M. Reilly (*Pro Hac* Application
                                    Forthcoming)
                                    A. Paul Heeringa (*Pro Hac* Application
                                    Forthcoming)
                                    2049 Century Park East
                                    Suite 1700
                                    Los Angeles, California 90067
                                    Telephone: 310.312.4000
                                    Email: creilly@manatt.com
                                    Email: pheeringa@manatt.com


                                    *Attorneys for Defendants*

18

1

## **LRCiv 12.1 CERTIFICATION OF MEET AND CONFER**

2

3

4

5

The undersigned certifies that, pursuant to LRCiv 12.1, that counsel for the parties did meet and confer telephonically, on September 2, 2022, to determine whether the issues asserted in this Motion were curable by Plaintiff. Plaintiff did not offer any amendment that would cure the issues. Therefore, the foregoing motion is opposed.

6

*/s/ Brent Demmitt*

7

8

## **CERTIFICATE OF SERVICE**

9

10

11

The undersigned hereby certifies that the foregoing document was electronically filed and served on all counsel of record in the above-captioned matter on September 6, 2022 via the Court's CM/ECF filing service.

12

*/s/ Hailey Wedemeyer*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28