Penny L. Koepke
pkoepke@hoalow.biz
**MAXWELL & MORGAN, P.C.**
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Classes*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Freeway Insurance Services America, LLC, an Illinois limited liability company,<br><br>*Defendant*. | Case No. 3:22-cv-08042-DGC<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STRIKE** |

**I.    INTRODUCTION**

This case is straight forward: Freeway inundates consumers with prerecorded telephone calls to sell its auto insurance policies absent any prior express written consent. Freeway also places repeated calls to numbers registered on the national Do Not Call registry (hereafter "DNC registry") absent any prior consent. Such conduct violates the the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act"), and Plaintiff Brenda Whittaker ("Whittaker" or "Plaintiff") filed this case to put a stop to Freeway's unlawful conduct.

Yet rather than answer for its unlawful conduct, Freeway (for the second time) has moved to dismiss the complaint and/or to strike the class allegations. While Plaintiff filed her second amended complaint ("SAC") which addressed all prior perceived deficiencies,

1

Freeway now attempts to move the goalposts and creates new arguments for dismissal. In doing so, Freeway employs a hyper-technical attack on the SAC and asks the Court to discard, ignore, or, in some cases, contradict Plaintiff's well-pleaded allegations. Fortunately for Plaintiff and other members of the alleged Classes who were harmed by Freeway's conduct, the motion is without merit and should be denied for at least the following reasons:

First, Freeway asserts that the DNC Registry claim must be dismissed because Plaintiff does not allege the receipt of more than one "telephone solicitation" in violation of the Act. This is so, according to Freeway, because the calls were merely informational in nature and not advertisements. This argument goes nowhere. Plaintiff specifically alleges that she received four calls from Freeway soliciting her to purchase its auto insurance policies. (SAC ¶¶ 18-24.) Put simply, when a defendant places calls for the purpose of selling auto insurance policies (as Freeway did here), the calls are "telephone solicitations" within the meaning of the Act.

Second, Freeway is off base by claiming that Plaintiff failed to allege sufficient facts to infer that a prerecorded voice was used to place the calls. Tellingly, in its prior motion to dismiss, Freeway took issue with Plaintiff's failure to allege facts regarding the "circumstances or contextual details" to infer that the call was prerecorded. (Dkt. 12, pg. 10.) In response, the SAC includes a transcript of the voicemail Plaintiff received, alleges that the message was generic and impersonal and that **identical** voicemail recordings can be found online, and notes that Freeway discloses on its website that it places calls using a prerecorded voice (and leaves prerecorded voicemails). Freeway now claims the allegations don't go far enough. Apparently, no amount of detail will ever be sufficient in Freeway's eyes.[1]

Third, Freeway asks the Court to interpret the SAC against Plaintiff by inferring that she consented to receive the calls at issue. Of course, consent is an affirmative

---

[1] It should be noted that Plaintiff's counsel sent a copy of the voicemail Plaintiff received to Freeway's counsel as far back as May 2022. So Freeway is well aware that the voicemail at issue in this case features an artificial or prerecorded voice.

2

defense, which may only be raised at the pleading stage if it is obvious on the face of the complaint. Here, Plaintiff specifically alleges that she has no relationship with Freeway and never consented. Freeway's request that the Court ignore and contradict these allegations is improper at the 12(b)(6) stage.

For its final argument in favor of dismissal, Freeway claims that Plaintiff failed to allege sufficient facts to support a claim for direct liability because she also alleged an alternative vicarious liability theory. But there is nothing improper about alleging alternative theories. Indeed, Rule 8 expressly permits the pleading of inconsistent facts and theories. Nevertheless, Plaintiff asserts that Freeway (not a third party) placed the calls at issue. This is sufficient to state a claim for direct liability under the TCPA.

Freeway's alternative motion to strike the class allegations and fee request is similarly meritless. First, given that Plaintiff tailored the class definition to objective confines, the classes are not fail-safes. Even still, Freeway cannot carry its burden to demonstrate that certification would be impossible on the face of the complaint. And second, Plaintiff's prayer relief properly includes a request for attorneys' fees <u>to be paid out of a common fund</u>. Because this is one of the exceptions to the general rule that litigants must pay their own fees, this also does not justify striking the pleadings.

As explained further below, Freeway's motion should be denied in its entirety.

## II. STATEMENT OF FACTS

Defendant Freeway is an insurance agency that specializes in providing non-standard auto insurance to consumers nationwide. (SAC ¶ 5.) To generate leads for its insurance services, Freeway engages in telemarketing by placing thousands of unsolicited, prerecorded telemarketing calls to consumers nationwide, including to telephone numbers are registered on the DNC registry. (*Id.* ¶¶ 6, 32.) Tellingly, on its website, Freeway discloses that it places prerecorded calls and leaves prerecorded voicemails to consumers who are registered on the DNC registry. (*Id.* ¶¶ 7-8.)

In Plaintiff Whittaker's case, she registered her cellular telephone number on the DNC registry on December 19, 2017. (*Id.* ¶ 16.) Notwithstanding this, Freeway placed

3

four telemarketing calls to Plaintiff soliciting her to purchase its auto insurance policies. (*Id.* ¶¶ 18-24.) She received the first and second telemarketing calls from Freeway on January 5, 2022, and January 7, 2022. (*Id.* ¶¶ 18-19.) On January 8, 2022, she received yet another telemarketing call. (*Id.* ¶ 20.) During this call, Freeway left Plaintiff a prerecorded voicemail message, which stated as follows: "Hi, this is Freeway Insurance, sorry I missed you. I'm calling you back about your insurance quote request and look forward to saving you on your car insurance. Thank you for calling us back at this number." (*Id.* ¶ 20.) She received a fourth unsolicited, telemarketing call later on January 8, 2022. (*Id.* ¶ 23.)

Plaintiff has no relationship with Freeway, she never visited its website, nor has she consented to receive any of the calls outlined above. (*Id.* ¶¶ 8-9, 27-28, 53-54.) Nevertheless, Freeway placed numerous calls to solicit her to purchase auto insurance. (*Id.* ¶ 24.) Freeway's counsel confirmed that this was the purpose of the calls. (*Id.* ¶ 25.) In placing the calls, Freeway also employed the use of a prerecorded voicemail message and utilized this <u>identical</u> voicemail with other consumers as well. (*Id.* ¶¶ 20-22.)

Based on these facts, the Court should deny the instant Motion.

## III.   ARGUMENT

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss, the court must "we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019) (citation omitted). "A court may not consider evidence outside the pleadings unless it converts the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment and gives the nonmovant an opportunity to respond." *Rodrigues v. Ryan*, No. CV1408141PCTDGCESW, 2016 WL 1301654, at *4 (D. Ariz. Apr. 4, 2016), aff'd in part, 702 F. App'x 637 (9th Cir. 2017) (citations omitted). "A court may, however, consider documents attached to the complaint or incorporated by

reference in the complaint, or matters of judicial notice". *Id.*

The Court should deny Freeway's motion to dismiss and/or to strike. First, Plaintiff alleges that she received more than one telephone solicitation in violation of the DNC regulations. Second, Plaintiff alleges sufficient facts to infer that a prerecorded voice was utilized during at least one of the calls. Third, there is no inference that can possibly be made to find that Plaintiff consented to the calls. Fourth, Plaintiff alleges that Freeway (not a third party) placed the calls at issue and can be held directly liable. Fifth and finally, there is no basis to strike the class allegations or the fee request.

**A.    Because the calls at issue were placed for the purpose of selling Freeway's auto insurance policies, all four calls were "telephone solicitations" within the meaning of the DNC Regulations.**

For its opening argument, Freeway asserts that Plaintiff's DNC Registry claim must be dismissed because: (1) the calls were apparently "informational" as opposed to "telephone solicitations" (def. mot. at 4-6), and (2) Plaintiff failed to allege the receipt of more than one telephone solicitation because she only alleged the content of one call (*id.* at 6). This argument goes nowhere.

To state a claim under Section 227(c), "a plaintiff to allege that the defendant made more than one telephone solicitation to him in a 12-month period while his number was on the Do Not Call registry." *Jorge Valdes v. Nationwide Real Est. Executives, Inc.*, No. SACV2001734DOCJDEX, 2021 WL 2134159, at *4 (C.D. Cal. Apr. 22, 2021) (citing 47 U.S.C. § 227(c)(5); *Naiman v. Adjustable Bedding Concepts, Inc.*, No. 2:19-cv-0702, 2020 WL 5105801, at *3 (E.D. Cal. Aug. 31, 2020)). "Telephone solicitation" means "the initiation of a telephone call or message for the **purpose** of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person". 47 C.F.R. § 64.1200(f)(15) (emphasis added). The calls need not explicitly solicit the sale of a good or service. Instead, calls that "encouraged recipients to engage in <u>future</u> purchasing activity" are "telephone solicitations". *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (text messages that encouraged users to

redeem rewards points constitute telephone solicitation) (emphasis added).

Here, the calls at issue are "telephone solicitations." Indeed, Plaintiff alleged that <u>all of the calls</u> (not just one of the calls) were placed for the purpose of selling Freeway's auto insurance policies and related products and services. (SAC ¶ 24.) And this allegation is reinforced by Freeway's own counsel's explanation that it placed the calls to contact Plaintiff about auto insurance. (*Id.* ¶ 25.) Added to this, the voicemail clearly stated that Freeway "look[s] forward to saving you on your car insurance." (*Id.* ¶ 20.) No amount of parsing the pleadings can obfuscate the true purpose of the calls: to sell auto insurance policies. Where calls are placed for the purpose of selling insurance, courts repeatedly find that the calls are "telephone solicitations" within the meaning of the TCPA. *See Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *7 (D. Mass. Dec. 13, 2021), *report and recommendation adopted*, No. CV 19-12235-LTS, 2022 WL 325722 (D. Mass. Feb. 3, 2022) (finding that calls placed to offer insurance quotes were "telephone solicitations"); *Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, No. 22-10229, 2022 WL 3130225, at *7 (E.D. Mich. Aug. 4, 2022). And because Plaintiff alleges that all four calls were placed for the same purpose, she has alleged the receipt of "more than one telephone solicitation" in a twelve-month period.

As a final point here, none of the four cases that Freeway cites as reliance (def. mot at 5-6) bear any resemble to the present case. The *Horton* case dealt with text messages advertising the availability of **free** COVID-19 vaccines. *Horton v. Tarrant Cnty. Hosp. Dist.*, No. 4:22-CV-9-P, 2022 WL 702536, at *3 (N.D. Tex. Feb. 4, 2022), *report and recommendation adopted*, No. 4:22-CV-0009-P, 2022 WL 620950 (N.D. Tex. Mar. 3, 2022). The *Vallianos* case dealt with text messages that informed the recipients that they could view a **free** online speech. *See Vallianos v. Schultz*, No. C19-0464-JCC, 2019 WL 4980649, at *3-4 (W.D. Wash. Oct. 8, 2019). In *Gulden*, the court found that the allegations that the calls were placed "for the purpose of soliciting for [Defendant's] products or services"—absent any further details—was insufficient and dismissed the claim <u>with leave to amend.</u> *Gulden v. Consol. World Travel Inc.*, No. CV-16-01113-

6

PHX-DJH, 2017 WL 3841491, at *3-4 (D. Ariz. Feb. 15, 2017). Likewise, the *Eggleston* case found that the allegations that the messages were "spam advertisements and/or promotional messages"—absent any contextual facts—was insufficient and dismissed the claims <u>with leave to amend.</u> *Eggleston v. Reward Zone USA LLC*, No. 2:20-CV-01027-SVW-KS, 2022 WL 886094, at *6 (C.D. Cal. Jan. 28, 2022). Put simply, Plaintiff's allegations go far beyond the allegations contained within these cases and dismissal without leave to amend would be inappropriate.

Simply put, it is common sense that phone calls soliciting the purchase of car insurance policies are solicitation calls. Accordingly, the assertion that Plaintiff has not alleged the receipt of more than one telephone solicitation falls flat, and the Motion should be denied.

**B.    Plaintiff adequately pleads the use of a prerecorded voice.**

Freeway next asserts that Plaintiff's prerecorded call claim must be dismissed because she failed to allege sufficient facts to infer that the voicemail featured a prerecorded voice. (Det. Mot. at 7-9.) In its prior motion, Freeway took issue with a perceived lack of "circumstances or contextual details" to infer that the call was prerecorded. (Dkt. 12, pg. 10.) Now that Plaintiff has pled the circumstances and contextual details, Freeway now takes issue with the facts themselves and asks the Court to either discard, strike, or draw an inference in Freeway's favor. (Def. Mot. at 7-9.) There is no basis to do so.

The TCPA prohibits calls that feature an artificial or prerecorded voice to consumer cellphones. 47 U.S.C. § 227(b)(1)(A)(iii). With regard to what is required to state a claim at the motion to dismiss stage, the case law in this Circuit is mixed. Some courts find allegations that a call featured a prerecorded voice on their own to be sufficient. *See Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *3–4 (D. Ariz. Mar. 6, 2014) (finding allegations that the plaintiff "heard a prerecorded messages" sufficient to state a claim) (collecting cases); *Vaccaro v. CVS Pharmacy, Inc.*, No. 13-CV-174-IEG RBB, 2013 WL 3776927, at *2 (S.D. Cal. July 16,

2013); *Mata v. Veros Credit, LLC*, No. SACV1698DOCJCGX, 2017 WL 2644633, at *4 (C.D. Cal. Jan. 20, 2017) (citation omitted). Other courts require some additional facts from which the use of a prerecorded voice can be inferred, such as the repeated use of the same prerecorded message, the generic content of the message, or the cadence of the speaker. *See Carroll v. Medicredit, Inc.*, No. 220CV01728KJDEJY, 2022 WL 823631, at *1 (D. Nev. Mar. 18, 2022) (finding allegations that a defendant repeatedly left the "same message" sufficient to infer the use of a prerecorded voice); *Greene v. Select Funding, LLC*, No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495, at *4 (C.D. Cal. Feb. 5, 2021) (allegations regarding "the generic content of the voice message" and "the speaker's cadence" is sufficient to infer the use of a prerecorded voice.).

Even applying the stricter standard, Plaintiff's allegations easily support an inference that a prerecorded voice was utilized. Indeed, Plaintiff alleges the entire transcript of the prerecorded call, which did not identify the caller or Plaintiff. (SAC ¶¶ 20-21.) Rather, it was a generic and impersonal message. (*Id.*) And for good reason, Freeway has placed this **exact same** voicemail to other individuals, recordings of which are available online. (*Id.* ¶ 22.) Freeway also seeks consent to leave prerecorded messages (like those alleged here) on its website. (*Id.* ¶¶ 7-8.) Finally, Plaintiff and her counsel both reviewed the voicemail and easily determined that it featured a prerecorded voice (*id.* ¶ 21)—this alone is sufficient. *See Rahn v. Bank of Am.*, N.A., No. 1:15-CV-4485-ODE-JSA, 2016 WL 7325657, at *4 (N.D. Ga. June 24, 2016), *report and recommendation adopted*, No. 1:15-CV-4485-ODE-JSA, 2016 WL 7335392 (N.D. Ga. Sept. 2, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").[2] Together, the allegations support the conclusion that a prerecorded voice was utilized.

Freeway's counterargument seeks to impose a pleading hurdle that it provides not

---

[2] Again, the voicemail has been provided to Freeway's counsel, who could (and likely have) reviewed the voicemail and also determined that it featured a prerecorded voice.

a single case to support. To start, Freeway concedes that Whittaker alleged that the prerecorded message was generic but faults her for failing to allege that: (1) she received any identical messages, (2) the voice sounded robotic, or (3) she tried to interact. (def. mot. at 7.) While neither *Johansen* nor *Oparaji*, on which Freeway relies, suggests that these allegations are necessary[3], they also make no sense in the context of the instant case. First, since Plaintiff only received <u>one</u> prerecorded voicemail, it's not clear how she could have alleged the receipt of additional messages. Nor does the receipt of one call in violation of the TCPA, as opposed to two or three, somehow absolve Freeway of liability. Second, because the voicemail used a "prerecorded voice" (SAC ¶¶ 20-21), it's also not clear how a robotic voice—which would be relevant if the call had featured an ***artificial*** voice—relates to the allegations. Third, Plaintiff could not have possibly "tried to interact" with the prerecorded voice because it was a voicemail and not a live call.

Freeway also claims that its website's disclosure regarding its intent to place prerecorded calls and leave prerecorded voicemails doesn't support an inference that Plaintiff "actually received one". (Def. Mot. at 7-8.) Once again, this views the SAC in a light most favorable to Freeway and tests the bounds of common sense. *See Brown v. Collections Bureau of Am., Ltd*, 183 F. Supp. 3d 1004, 1007 n.4 (N.D. Cal. 2016) ("As a matter of the 'common sense' that the court is supposed to exercise, defendant's suggestion that it may have used an ATDS to call other persons, but did not do so when calling Brown, is counterintuitive."). Construing this allegation in a light most favorable to Plaintiff, the Court can infer that Freeway's use of prerecorded voicemails paired with Plaintiff's allegation that she received a prerecorded voicemail is plausible.

Finally, Freeway asks the Court to strike or disregard (it isn't clear which) the allegations relating to online posts with identical voicemails. But unlike the cases that Freeway cites to, the allegations do not relate to anonymous users' <u>opinions</u>. Rather,

---

[3] Both *Johansen* and *Oparaji* actually suggest that alleging that the calls were "generic" would be sufficient. *See Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012); *Oparaji v. Home Retention Corp.*, No. 21 CV 2758 (ENV)(LB), 2022 WL 987560, at *7 (E.D.N.Y. Jan. 11, 2022).

9

Plaintiff alleges that <u>recordings</u> of the same prerecorded voicemail with the same voice are available online. (SAC ¶ 22.) The fact that the **<u>identical</u>** recordings exist at all supports the conclusion that it was a prerecorded message as opposed to a live caller. And courts repeatedly find online posts can be considered at the pleading stage. *See Szumilas v. CBE Grp. Inc.*, No. CV1508595ABGJSX, 2016 WL 11742895, at *5 (C.D. Cal. Aug. 17, 2016) (finding that online posts regarding a defendant's conduct support an inference regarding the technology used in a TCPA case); *Brown*, 183 F. Supp. 3d at 1006.

In short, Plaintiff has alleged sufficient facts from which the Court could plausibly infer that the voicemail featured a prerecorded voice, and the Motion should be denied.

    **C.**    **Plaintiff specifically pleaded that she has no relationship with Freeway and never consented to the calls at issue—hence, there is no consent inference that can be drawn.**

Next, Freeway attempts to introduce false allegations into the pleadings by claiming that "Plaintiff provided her consent to be called." (Def. Mot. at 9.) To craft this fiction, Freeway asks the Court to contradict the SAC and infer that because Plaintiff quotes from its website[4] and the prerecorded voicemail starts with "I'm calling you back about your insurance quote", Plaintiff must have visited the website and provided consent. (*Id.* at 10.) This argument is specious.

The first problem with Freeway's argument is that, as explained above, the calls at issue were "telephone solicitations." As such, Freeway's assertion that prior express consent "need not be written" (def. mot. at 9 n.3) is incorrect. Rather, marketing related calls require "prior express **<u>written</u>** consent". *Massaro v. Beyond Meat, Inc.*, No.

---

[4] Freeway's request to take judicial notice of its website should be denied. Its website is neither generally known nor can it be said to be accurate. *See McCall v. Williams*, No. CV-19-05126-PHX-SMB, 2020 WL 6699493, at *3 (D. Ariz. Nov. 13, 2020). Moreover, Freeway's request seeks judicial notice of the appearance of the website as of September 6, 2022 (def. mot. at 8 n.2), which was ***<u>after</u>*** this lawsuit was filed. Freeway has offered no evidence, let alone evidence that is "generally known" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned", regarding the appearance of its website during the relevant time period (i.e. prior to the calls being placed). *See Whittaker v. Real Est. Heaven Int'l Inc.*, No. CV-21-08212-PCT-DJH, 2022 WL 1540168, at *3 (D. Ariz. May 16, 2022) (citing Fed. R. Evid. 201(b)) (denying a similar request).

320CV00510AJBMSB, 2021 WL 948805, at *4 (S.D. Cal. Mar. 12, 2021) (If the call, "includes or introduces an advertisement or constitutes telemarketing," the caller must obtain "prior express written consent") (citing 47 C.F.R. at §§ 64.1200(a)(1) and (2)) (emphasis added). In the DNC Registry context, "prior express invitation or permission" must also be "evidenced by a signed, **written** agreement". 47 C.F.R. 64.1200(c)(2)(ii).

But regardless of the standard applied, "consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). At the pleading stage, a defendant may only raise an affirmative defense when it "**is obvious on the face of a complaint**." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (emphasis added). Freeway's motion doesn't even mention let alone meet this standard. And for good reason, it can't.

Put simply, there is no consent inference whatsoever that can be inferred from the allegations in the SAC. Plaintiff specifically alleges that she never consented to receive the calls at issue, that she never expressed any interest in Defendant's products or services, and that she has no prior relationship with Freeway. (SAC ¶¶ 27-28.) She also alleges that she never accessed Freeway's website and did not agree to be contacted. (*Id.* ¶ 8.)

Contradicting these allegations, Freeway asks the Court to conclude that because the SAC includes its website's consent disclosure it follows that Plaintiff must have visited the website. (Def. Mot. at 10.) This is nonsensical. Two things can be (and in this case are) true: Plaintiff's counsel can have reviewed Freeway's website during their pre-suit investigation, and Plaintiff cannot have visited the website. Indeed, Plaintiff alleges that she has never accessed Freeway's website and did not agree to be contacted. (SAC ¶ 8.) Nor does its contention that because it chose to leave voicemails starting with "I'm calling you back about your insurance quote" somehow create evidence of consent at the pleading stage. Much in the same way that individuals receiving calls stating "We are calling you back regarding your cars extended warranty" have not consented, the fact that

11

Freeway chooses to employ deceptive marketing tactics to trick consumers into believing there is some relationship does not logically presume that anyone consented. *See Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) ("Defendant argues the fact that the message asked plaintiff to 'confirm [her] opt-in' conclusively demonstrates she previously consented to receive it. However, it is plausible that a marketing message might be sent with such language even in the absence of actual prior express consent.").

In the end, Freeway's invitation for the Court to discard the well pleaded allegations and infer that Plaintiff must have consented is a step too far. And courts routinely reject similar requests. *Risher v. Adecco Inc.*, No. 19-CV-05602-RS, 2020 WL 13505422, at *3 (N.D. Cal. Feb. 14, 2020) (rejecting a similar argument and noting that it stretches "the permissible inquiry under Rule 12(b)(6) to the breaking point or beyond, the facts as presently pleaded arguably support a contrary inference that any consent"); *Daniel v. Lennar Corp.*, No. 819CV00452JLSDFM, 2019 WL 8194735, at *5 (C.D. Cal. Oct. 16, 2019) (rejecting a similar argument).

    **D.**    **Freeway placed the calls at issue and, thus, can be held directly liable.**

For its final argument in "support" of dismissal, Freeway recycles an argument from its prior motion (dkt. 12, pgs. 6-7) by claiming that Plaintiff fails to allege sufficient facts to support its direct liability for the calls. (Def. Mot. at 11-14.) This attack views the SAC with blinders on and ignores the allegations that Freeway, itself, placed the calls to sell its own products and services.

TCPA liability attaches when callers either "(1) directly make the call, or (2) have an agency relationship with the person who made the call." *Ewing v. Freedom Forever LLC*, No. 20-CV-880-JLS (AHG), 2021 WL 1087100, at *3 (S.D. Cal. Mar. 22, 2021) (citation omitted). Generally, allegations that a defendant placed a call or text message are sufficient to state a claim for direct liability. *See Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH-AGS, 2022 WL 1505865, at *2 (S.D. Cal. May 12, 2022) (finding allegations that a defendant direct send text messages to advertise its services to be

sufficient to state a TCPA claim based on a direct liability theory); *Whittaker*, 2022 WL 1540168, at *4 (D. Ariz. May 16, 2022) (finding allegations that a defendant "sent the text messages" sufficient to assert a TCPA claim based on direct liability.); *Hoagland v. Axos Bank*, No. 20-CV-00807-BAS-DEB, 2021 WL 4924814, at *3 (S.D. Cal. Oct. 21, 2021) (finding the allegation that "[defendant] or its affiliate placed the call" was sufficient to state a TCPA claim based on direct liability).

In this case, Plaintiff does not "equivocate" as to who may have placed the calls at issue. Rather, Plaintiff alleges that Freeway, an insurance agency that specializes in providing non-standard auto insurance, conducted a telemarketing campaign to sell "its insurance policies." (SAC ¶¶ 5-6.) As part of this campaign, Freeway, itself (not a third party), placed four telemarketing calls to Plaintiff to solicit her "to purchase Defendant's auto insurance policies as well as related insurance products and services." (*Id.* ¶¶ 18-24.) During one of those calls, Freeway left a prerecorded voicemail message, which identified the caller as "Freeway Insurance". (*Id.* ¶ 20.) Plaintiff also placed a return call to the telephone number to confirm that the identity was indeed Freeway. (*Id.* ¶ 23.) Finally, and what poses the death knell to this argument, Defendant's counsel confirmed that Freeway directly placed the calls to Plaintiff. (*Id.* ¶ 25.) Taken together, these allegations easily state a claim for direct liability.

Freeway goes out of its way to argue that because Plaintiff included an alternative vicarious liability theory in her complaint she somehow "does not know who actually physically placed the calls." (Def. Mot. at 12.) But Rule 8 explicitly "allows parties to plead inconsistent factual allegations in the alternative."[5] *Rex Inv. Co. Ltd v. S.M.E., Inc.*, No. 15-CV-02607-H-JMA, 2016 WL 4507463, at *6 (S.D. Cal. Aug. 29, 2016). Such

---

[5] To the extent that Freeway seeks dismissal based on the alternative theory, the Ninth Circuit recently made clear that it is not necessary to plead alternative theories, such as vicarious liability, at the pleading stage. *See McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 WL 1012471, at *1 (9th Cir. Apr. 5, 2022). Rather, "plaintiffs may 'make known during discovery their intention to pursue recovery on the ... theory omitted from their complaints.'" *Id.* Nevertheless, Plaintiff included her vicarious liability allegations as an alternative to direct liability to provide Freeway with ample notice.

13

alternative theories do not provide "a basis for dismissal of the claim." *Id.*; *see also Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999).

Because Plaintiff alleged that Freeway directly placed the calls at issue, it can be held directly liable.

### E. There is no basis to strike the class allegations or the fee request.

Freeway closes its motion by claiming that the Court should strike Plaintiff's class allegations and her request for attorneys' fees. (Def. Mot. at 14-17.) This argument is little more than an improper attempt to prematurely litigate the merits of class certification on an incomplete record. The Court should reject this attempt.

While Freeway asserts that courts "routinely" strike class definitions at the pleading stage (def. mot. at 14), the reality is that "it is in fact rare to do so in advance of a motion for class certification." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases). Striking class allegations absent discovery is only appropriate "when it is clear from the face of the complaint that no class can be certified." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016) (citation omitted). The better course of action is "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." *Nickerson v. Goodyear Tire & Rubber Corp.*, No. 820CV00060JLSJDE, 2020 WL 4937561, at *11 (C.D. Cal. June 3, 2020) (citing *In re Ford Motor Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 338 (D.N.J. 1997)).

To prevail on a motion to strike class allegations, it is "the defendant who must bear the burden of proving that the class is not certifiable." *Naiman v. Alle Processing Corp.*, No. CV20-0963-PHX-DGC, 2020 WL 6869412, at *6 (D. Ariz. Nov. 23, 2020) (citation omitted). Once again, Freeway's motion doesn't even recognize, let alone meet, this burden. Instead, it erroneously claims that the pleadings should be stricken for the following reasons: (1) the proposed definitions are apparently "Fail-Safe[s]" (def. mot. at 14-15); (2) common questions of law and fact would not predominate (*id.* at 16-17); and

14

(3) Plaintiff included a fee request in her prayer for relief (*id.* at pg. 17). As explained in turn, each of these assertions is incorrect.

**First**, Freeway is incorrect that the class definitions are fail-safes. To start, the inclusion of the phrase "acting on behalf of" Freeway does not create a fail-safe. Rather it acknowledges the previously discussed alternative vicarious liability theory. At the certification stage, Plaintiff will propose a modified class definition as necessary based on the discovery produced in this case. This is perfectly acceptable. *See Waterbury v. A1 Solar Power Inc.*, No. 15CV2374-MMA (WVG), 2016 WL 3166910, at *4 (S.D. Cal. June 7, 2016) ("most courts decline to grant motions to strike class allegations prior to motions for class certification because 'the shape and form of a class action evolve[ ] only through the process of discovery.'").

Moreover, the inclusion of the phrases "prior express written consent" and "prior express invitation, permission, or consent" likewise do not render the definitions fail-safes. Freeway completely reads the terms out of context. Plaintiff does not (as Freeway claims) limit the Classes to individuals who provided consent. Rather, the class definitions are tailored to individuals for whom Defendant "**claims**" it obtained consent "**in the same manner**" as it "**claims**" it obtained consent to call Plaintiff. (SAC ¶ 30.) In other words, the Classes are limited to Defendant's **purported** consent. Whether that consent is legally sufficient under the TCPA will be a common question with a common answer—one on which the entire Class may win or may lose. Put simply, whether a member prevails in the lawsuit is not determined by mere inclusion in the Classes alone. The class members can lose the case if Freeway's consent theory is somehow determined to be sufficient. Thus, Plaintiff's class definitions are simply not fail-safes.

**Second**, Freeway's claim that common issues will not predominate is grossly premature and based entirely on speculation that is antithetical to the class definition. For example, Freeway ponders that there may be a wide variety of third parties involved in obtaining consent. (Def. Mot. at 16.) But as explained above, the class definition is limited to individuals that Freeway claims consented in the **same manner** as Plaintiff.

Hence, class members that provided purported consent through other means are excluded from the class. Moreover, if some portion of individuals provided their consent via Freeway's website (as it contends, *see* def. mot. at 17), those individuals would also be excluded from the class. Put simply, the class definition is limited to members that were subjected to the same course of conduct as Plaintiff, and Freeway's argument is premature and speculative at best.

As an additional point here, neither a fail-safe nor potential common issues is a reason to strike class allegations. It's only appropriate to strike the class allegations when it is clear that no class could ever be certified. *Cheatham*, 161 F. Supp. 3d at 834. In the course of litigation, class definitions are regularly modified. *See Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2019 WL 4849613, at *5 (D. Ariz. Sept. 30, 2019). ("the Court 'may construct a definition of the class or may modify a proposed definition where the original is inadequate'"); *Campbell v. PricewaterhouseCoopers LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008) (courts retain the discretion to alter class definitions) (citation omitted). The notion that the class definitions are somehow set in stone and that this provides grounds for striking the class allegations on the pleadings is simply incorrect. Class definitions are malleable. Consequently, should the Court find that the class allegations are insufficient, Plaintiff should be granted leave to amend. *See Brown v. DIRECTV, LLC*, No. CV1301170DMGCFEX, 2014 WL 12599363, at *2 n.3 (C.D. Cal. May 27, 2014) (acknowledging that courts typically grant leave to amend when striking class allegations).

**Third**, Freeway also asks the Court to strike Plaintiff's request for attorneys' fees and costs because the TCPA "is not a fee shifting statute". (Def. Mot. at 17.) Plaintiff agrees that the TCPA does not permit the recovery of attorneys' fees in individual actions, however, that is not the requested relief. Rather, Plaintiff seeks an award of attorneys' fees and costs "to be paid out of the common fund". (SAC, Prayer for Relief, ¶ G.) The "common fund exception" is one of the exceptions to the general rule that litigants must pay their own fees. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S.

16

Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991). Accordingly, there is no reason to strike Plaintiff's proper fee request.

Try as it may, Freeway cannot point to any viable reason to strike Plaintiff's class allegations or fee request. As such, its motion to strike should be denied as well.

### F. To The Extent The Court Finds That The Complaint Is Deficient, Plaintiff Should Be Granted Leave To Amend.

"[L]eave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1-52 (9th Cir. 2003). Freeway asks that the Court dismiss the SAC with prejudice because "plaintiff had at least one chance to amend but failed to cure" prior deficiencies. (Def. Mot. at 14.) Yet, Freeway neglects to mention that neither of Plaintiff's prior amendments was in response to a finding that the pleadings were deficient. Rather, the first was with Freeway's consent (dkt. 10) and the second was as a matter of course (dkt. 14). To the extent the Court determines that the SAC should be dismissed, Plaintiff respectfully requests leave to amend to cure any defects.

## IV. CONCLUSION

Defendant's motion should be denied in its entirety. Freeway purposely directed unsolicited, prerecorded telemarketing calls to Plaintiff to solicit her to purchase its auto insurance policies. Such conduct plainly violates the TCPA's prohibitions against prerecorded calls and solicitation calls to numbers registered on the DNC Registry. Accordingly, the Court should deny Defendant's motion and order such additional relief as it may deem necessary and just.

Dated: September 20, 2022          **BRENDA WHITTAKER**, individually and on behalf of all others similarly situated,

By: /s/ Taylor T. Smith

17

One of Plaintiff's Attorneys

Penny L. Koepke
pkoepke@hoalow.biz
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*pro hac vice admission to be sought

*Counsel for Plaintiff and the Putative Classes*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on September 20, 2022.

                          /s/ Taylor T. Smith