Penny L. Koepke
pkoepke@hoalaw.biz
**MAXWELL & MORGAN, P.C.**
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Classes*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-08042-DGC |
| *Plaintiff*, | **JOINT PROPOSED CASE MANAGEMENT REPORT** |
| v. | |
| Freeway Insurance Services America, LLC, an Illinois limited liability company, | |
| *Defendant*. | |

Plaintiff Brenda Whittaker ("Plaintiff" or "Whittaker") and Defendant Freeway Insurance Services America, LLC ("Freeway" or "Defendant") jointly and respectfully submit this Proposed Case Management Report pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, and the Court's Order Setting Rule 16 Scheduling Conference (Dkt. 22).

**1.    The parties who attended the Rule 26(f) meeting and assisted in developing the Case Management Report:**

On behalf of Plaintiff Brenda Whittaker: Taylor T. Smith; Woodrow & Peluso, LLC; Admitted *Pro Hac Vice*

On behalf of Defendant Freeway Insurance Services America, LLC: A. Paul Heeringa, Esq.; Manatt, Phelps & Phillips, LLP; Admitted *Pro Hac Vice*

1

2.  **A list of the parties in the case, including any parent corporations or entities (for recusal purposes):**

Plaintiff: Brenda Whittaker and the alleged Class

Defendant: Freeway Insurance Services America, LLC is a wholly owned subsidiary of Confie Risk Solutions, LLC.

3.  **A short statement of the nature of the case:**

Plaintiff's Position: The case challenges Defendant's alleged violations of the Telephone Consumer Protections Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or the "Act"), specifically their practice of sending unsolicited, prerecorded telemarketing calls to cellular telephone numbers, including to numbers registered on the National Do Not Call Registry.

The facts are straightforward: Plaintiff registered her cellular telephone number on the DNC Registry on December 19, 2017. Notwithstanding this registration, Defendant four telemarketing calls to Plaintiff soliciting her to purchase its auto insurance policies. She received the first and second telemarketing calls from Freeway on January 5, 2022, and January 7, 2022. On January 8, 2022, she received yet another telemarketing call. During this call, Freeway left Plaintiff a prerecorded voicemail message, which stated as follows: "Hi, this is Freeway Insurance, sorry I missed you. I'm calling you back about your insurance quote request and look forward to saving you on your car insurance. Thank you for calling us back at this number." She received a fourth unsolicited, telemarketing call later on January 8, 2022.

Plaintiff has no relationship with Freeway, she never visited its website, nor has she consented to receive any of the calls outlined above. Nevertheless, Freeway placed numerous calls to solicit her to purchase auto insurance. Accordingly, Plaintiff, on behalf of herself and a Class of similarly situated individuals, brings this action to put an end to Defendant's serial violations of the TCPA.

Defendant's Position:  Freeway disputes Plaintiff's position above.  Freeway does not make or cause others to make unsolicited (let alone unlawful) telemarketing calls, and

certainly did not do so in this case. Rather, Freeway contends—and, indeed, has provided Plaintiff's counsel with evidence showing— that Plaintiff visited Freeway's website on January 5, 2022 after searching for auto insurance on Google, ostensibly to request an insurance quote from Freeway.[1] In doing so, Plaintiff provided her personal information and her "prior express *written* consent" - within the meaning of the TCPA - to be contacted by Freeway on the cell phone number she provided. This, however, was all a ruse.

In reality, Plaintiff is a serial TCPA litigant who had no intention of purchasing insurance from Freeway and, instead, desired to be called so that she could file the present TCPA lawsuit. Available evidence thus far suggests that, to accomplish this goal, Plaintiff (or someone acting at her direction) may have logged onto Freeway's website using a "Virtual Private Network" or other IP address masking software, input Plaintiff's cell phone number, and varied Plaintiff's contact information just enough (e.g., used a valid mailing address that is associated with Plaintiff and within same county but is not her current residence), so that Plaintiff could later claim that she did not consent once she commenced this lawsuit. Thus, it is Freeway's position that this TCPA lawsuit is wholly without merit.

Aside from the lack of merit of Plaintiff's individual claims, Defendant contends that this matter is wholly inappropriate for class action treatment. This case raises serious concerns regarding Plaintiff's standing to bring a claim in the first instance. Given evidence showing that Plaintiff consented to be called, Plaintiff is neither a typical nor adequate class representative. At a minimum, it is clear that this suit will largely be dominated by issues that are unique to Plaintiff and her individual claims, also compromising her ability to serve as a class representative. Even if Plaintiff somehow did not fill out a request for information or direct someone to do so on her behalf (despite evidence showing otherwise), Plaintiff could not represent a class of consumers who did.

---

[1] Separately, approximately nineteen (19) minutes later, Freeway received yet another request from Plaintiff for auto insurance, this time from non-Freeway website.

1  Moreover, the foregoing demonstrates that common questions of law and fact will not
2  predominate in this case and, as such, that individualized determinations—particularly on
3  the case-dispositive issue of consent—will be required. Federal courts routinely deny
4  class certification in TCPA cases, recognizing that consent is a predominant issue of fact,
5  and Plaintiff's own experiences show there is a variety of ways one could provide their
6  consent in this case.   Hundreds, if not thousands, of mini-trials would be needed to
7  determine that issue in this case, which further makes class treatment inappropriate.

**4.     The jurisdictional basis for the case, describing the basis for jurisdiction and citing specific statutes:**

This case is an alleged putative class action, in which Plaintiff is seeking relief under the TCPA, a federal statute. As such, Plaintiff contends that the Court has original jurisdiction under 28 U.S.C. § 1331, and that this Court has federal subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA") because there are over 100 putative class members, there is minimal diversity, and there is over $5,000,000 at issue when the claims of the Class are aggregated. None of the exceptions to CAFA applies.

Defendant's position is that this Court lacks federal subject matter jurisdiction to the extent Plaintiff lacks standing under Article III of the United States Constitution, particularly to the extent that Plaintiff provided her consent to be called and/or fabricated this lawsuit.

**5.     Any parties which have not been served and an explanation of why they have not been served, and any parties which have been served but have not answered or otherwise appeared:**

All parties have been served and there are no issues with service.

**6.     A statement of whether any party expects to add additional parties to the case or otherwise to amend pleadings:**

<u>Plaintiff's Position</u>: At this time, Plaintiff does not expect to add any additional parties or amend the pleadings. However, Plaintiff reserves the right to amend to add additional parties that may be identified in discovery. Plaintiff requests a four-month deadline to amend pleadings.

<u>Defendant's Position:</u> At this time, Freeway does not expect to add additional parties or amend its answer and affirmative defenses. However, it may be necessary for Freeway to add additional parties or to amend its answer and affirmative defenses to the extent that discovery reveals who besides Plaintiff was responsible for inputting Plaintiff's information on Freeway's website and, therefore, reserves the right to do so. Freeway agrees that a four-month deadline to amend pleadings is appropriate.

**7.    A listing of contemplated motions and a statement of the issues to be decided by those motions:**

<u>Plaintiff's Position:</u> Plaintiff intends to move for class certification following an appropriate period of class discovery. Plaintiff also intends to move for summary judgment after a class has been certified. Plaintiff may also need to file a motion to amend the pleadings and discovery motions as appropriate.

<u>Defendant's Position:</u> Freeway intends to move for summary judgment on Plaintiff's claims after a short period of bifurcated discovery focusing on the merits of Plaintiff's individual claims to the extent the Court grants Freeway's request for bifurcated discovery (*see* Section 15 below), or following an appropriate period of class discovery should the Court not grant summary judgment in Freeway's favor on Plaintiff's individual claims or permit bifurcated discovery.  Freeway anticipates that it may be necessary for the parties to move for a protective order governing the production of confidential documents.  Freeway may also need to move to amend its answer and affirmative defenses, may seek leave to file a counterclaim, and/or may need to file discovery-related motions, as necessary and appropriate.

**8.    Whether the case is suitable for reference to a United States Magistrate Judge for a settlement conference or trial:**

The Parties do not consent to referring any aspect of the case to a United States Magistrate Judge.

**9.    The status of any related cases pending before other courts or other judges of this Court:**

The Parties are not aware of any related cases at this time.

5

**10.     A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information, including the parties' preservation of electronically stored information and the form or forms in which it will be produced (see Rules 16(b)(3), 26(f)(3)):**

During the Rule 26(f) conference, counsel for the Parties discussed the potential ESI implicated in this case. The Parties confirm that, to the best of their knowledge, any relevant ESI is being appropriately preserved and reserve all rights in this regard. Should discovery proceed, the Parties are committed to working together to reduce the costs of ESI-related discovery.

During the Rule 26(f) conference, counsel for the Parties also discussed preservation of all of Plaintiff's electronic devices. Plaintiff's counsel has represented that such devices have been preserved. Defendant requests that all devices in Plaintiff's household and/or to which Plaintiff has access or has used also be preserved. Defendant reserves all rights in this regard.

**11.     A discussion of any issues relating to claims of privilege or work product (see Rules 16(b)(3), 26(f)(3)):**

The Parties do not anticipate any issues relating to claims of privilege or work product at this time. The Parties agree to prepare and produce a privilege log with respect to all documents, electronically stored information, things and oral communications withheld by them on the basis of a claim of privilege or work product protection, except for written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action, or any such communications occurring and materials created on or after Plaintiff's pre-suit demand letter to Freeway dated January 11, 2022.

**12.     A discussion of whether an order under Federal Rule of Evidence 502(d) is warranted in this case:**

The Parties do not anticipate that an order under Federal Rule of Evidence 502(d) will be necessary, but reserve all rights in this regard.

13. **A discussion of necessary discovery. This discussion should take into account the December 1, 2015 amendments to Rule 26(b)(1), and should include:**

   a. *The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case;*

   <u>Plaintiff's Position</u>: Discovery is needed regarding certain threshold issues that will materially advance the case:

   (1) Whether Defendant procured prior express consent, invitation, or permission to place the calls at issue;

   (2) Whether Defendant placed calls to consumers whose numbers are registered on the National DNC Registry *en masse*;

   (3) Whether Defendant placed calls to consumers that featured the use of an artificial and/or prerecorded voice;

   (4) Whether the proposed class can be certified as a class action in accordance with Federal Rules of Civil Procedure 23;

   (5) Whether Plaintiff is entitled to injunctive relief;

   (6) If Defendant violated the TCPA, whether it did so willfully; and

   (7) Defendant's affirmative defenses.

   <u>Defendant's Position</u>: Defendant anticipates that discoverable evidence in this matter may include (but may not be limited to) relevant documents and witness testimony relating to, supporting, and with respect to jurisdictional issues (particularly, as to Plaintiff's Article III standing), Defendant's liability under the TCPA, the merits of Plaintiff's underlying TCPA claims and Defendant's affirmative defenses thereto, the involvement of any third parties in the underlying claims, causation, class certification, class membership and damages. Discovery will also include the inspection and forensic analysis of the devices assigned to the subject phone number in the operative Complaint, and any computers or other internet accessible electronic devices in Plaintiff's household or to which Plaintiff has access (including any work computers). Discovery of evidence in possession of third parties, including Plaintiff's cellular and internet service provider(s), persons in Plaintiff's household, or persons who had access to and/or used

the subject phone and phone number, will also be needed. Defendant respectfully submits that such discovery is proportional to the needs of this case because, among other reasons, the Parties dispute whether Plaintiff consented to the at-issue calls and the evidence shared with Plaintiff's counsel thus far suggests that Plaintiff or someone at Plaintiff's direction filled out a request for information on Freeway's website after performing a Google search looking for affordable auto insurance.

> b. *Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure;*

The Parties do not propose any changes to the discovery limitations or length of depositions provided by the Federal Rules of Civil Procedure.

> c. *The number of hours permitted for each deposition. The parties should consider whether a total number of depositions hours should be set in the case, such as 30 total hours for Plaintiffs and 30 total hours for Defendants. Such overall time limits have the advantage of providing an incentive for each side to be as efficient as possible in each deposition, while also allowing parties to allocate time among witnesses depending on the importance and complexity of subjects to be covered with the witnesses.*

The Parties do not propose any changes to the hourly limits for depositions.

**14. A statement of when the parties exchanged or will exchange Federal Rule of Civil Procedure 26(a) initial disclosures:**

The Parties will exchange initial disclosures by February 28, 2023.

**15. Proposed Deadlines**

Plaintiff's Position: Plaintiff opposes Defendant's phased discovery plan. To start, Freeway falsely claims that "the evidence gathered and shared with Plaintiff's counsel to date tends to show that Plaintiff is manufacturing a TCPA lawsuit for personal gain". The evidence produced to date demonstrates the complete opposite. Plaintiff has not "manufactured a TCPA lawsuit for personal gain". Rather, she received unsolicited phone calls and asserted her rights under federal law. The reality is that Freeway has revealed that it possesses two separate fraudulent leads for Plaintiff—one submitted to its own website and another to a third-party website, www.quotewizard.com. The problem for Freeway is

that it has not offered (and cannot offer) any evidence that substantiates that these are valid leads. Plaintiff flatly denies visiting either website. Aside from Plaintiff's name and phone number, the leads contain conflicting and inaccurate information. Most glaring, the leads emanate from two <u>separate</u> IP Addresses (submitted just 19 minutes apart), which both trace back to a foreign country (Mexico City, Mexico[2])—a hallmark of a fraudulent lead.[3] The leads also contain separate mailing addresses for Plaintiff—neither of which is accurate (or ever was accurate)—and contain false information for virtually every other category of information known to be supplied.[4] While this information would tip off a reasonable recipient that the leads were fake, Freeway apparently saw no problem with placing telemarketing calls in reliance on these leads, in violation of the TCPA. Freeway should not now be permitted to use the fraudulent leads as a basis to bifurcate discovery.

Second, and more problematic, while in certain cases bifurcating between class and merits discovery makes sense, here any so-called "merits" issues are so hopelessly intertwined with the class issues that attempting to separate them would only lead to confusion, disagreement, and the need for Court supervision. *See Manual for Complex Litig*. § 11.214 (4th ed) (The court should ascertain what discovery on class questions is needed for a certification ruling and how to conduct it efficiently and economically….Discovery may proceed concurrently if bifurcating class discovery from merits discovery would result in significant duplication of effort and expense to the parties.").

---

[2] Freeway asserts that one of the IP addresses traces to Canada and not Mexico. However, its counsel initially identified the IP address as tracing to Mexico and then during later searches the same IP address traced to Canada. Plaintiff doesn't dispute that the location subsequently changed.

[3] https://www.anura.io/blog/are-you-paying-for-fake-leads-stop-lead-gen-fraud-now (explaining that foreign IP addresses are an indication of lead fraud)

[4] Freeway has not provided the leads in question to Plaintiff despite requests—likely because the information contained within both leads would reveal the obviously fraudulent nature of the leads.

An example of the overlap between class and merits issues can be found in the lead data submitted to both Freeway's website and www.quotewizard.com. Freeway will likely argue that the lead data constitutes class related discovery and is not relevant to Plaintiff's individual claim. But this is simple not the case. Rather, lead generation fraud continues to be one of the single biggest issues in the marketing and telemarketing industries. (*See* https://activeprospect.com/blog/what-is-lead-fraud/ (last visited October 21, 2022)). Some industry experts estimate that roughly **45 percent** of all affiliate marketing web traffic is fraudulent. (*See* https://www.anura.io/blog/how-much-fraud-do-affiliate-programs-have (last visited October 21, 2022)). Plaintiff plans to seek discovery relating to all of the leads obtained from both websites to ascertain patterns of abuse and fraud. Indeed, if Freeway (as it did with Plaintiff's supposed leads) accepted thousands of leads emanating from foreign countries or the same IP Addresses or that are riddled with bot-generated information, it would completely undercut Freeway's consent defense and would be relevant to the willfulness of its actions. As one court aptly explained,

> The Court does not agree with defendants' contention that class members' consent or proof of defendants' willfulness necessarily break down into individual inquiries. Evidence of error-ridden lead lists, filled with nonsense or seemingly bot-generated information is relevant to the express consent defense, as well as to the willfulness of the alleged TCPA violations. If defendants' lead databases were filled with "fake leads," such evidence does not precipitate an individualized inquiry on consent, but rather undermines a claim that the registration websites were designed to ensure defendants' obtained express consent.

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 988, n.18 (N.D. Cal. 2019).

Because class and merits discovery are typically intertwined, most courts to consider this issue decline to bifurcate TCPA class actions. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("many courts 'are reluctant to bifurcate class-related discovery from discovery on the merits. . . . This is because the distinction between class certification and merits discovery is murky at best and impossible to determine at worst." (citations omitted)); *Gusman v.*

*Comcast Corp.*, 298 F.R.D. 592, 595 (S.D. Cal. 2014) ("the merits/certification distinction is not always clear. Facts that are relevant to the class determination frequently will overlap with those relevant to the merits of the case."); *Johansen v. Loandepot.com LLC*, No. SACV2000919DOCJDE, 2020 WL 7230976, at *1 (C.D. Cal. Nov. 10, 2020) (declining to bifurcate a TCPA class action because of the substantial overlap between class and merits discovery); *See In re Groupon, Inc. Sec. Litig.,* No. 12 C 2450, 2014 WL 12746902, at *4 (N.D. Ill. Feb. 24, 2014) ("several courts have noted that bifurcation can actually increase the costs of litigation because of disputes over what constitutes merits and what constitutes class discovery.").

Furthermore, the lack of specificity in Freeway's bifurcation request, which will apparently be mostly focused on searching "all electronic devices to which Plaintiff or members of her household had access", makes clear that this is nothing but an impermissible fishing expedition with the hope of tying the fraudulent leads to Plaintiff. Indeed, if the Court permits Freeway to conduct the invasive searches into Plaintiff's and non-parties' electronic devices but denies Plaintiff the ability to obtain all lead data from the subject websites, it would not be bifurcating between individual vs. class claims. Rather, it would be bifurcating this case between Defendant's theories and Plaintiff's theories—with Plaintiff being required to take a back seat.

Consequently, Plaintiff would be prejudiced should the Court grant Freeway's bifurcation request. Indeed, under Defendant's plan, Plaintiff would need to first clear the hurdle of proving she can beat summary judgment on her individual claims without any corresponding ability to seek summary judgment in her favor. Then, only after surviving summary judgment would Plaintiff be able to seek discovery related to class certification—which will take months to gather. In this case, bifurcating discovery is will only serve to delay the case. It will result in the need to issue multiple and duplicative sets of discovery requests and subpoenas for substantially the same categories of information. For example, LendingTree, which operates www.quotewizard.com, will likely need to respond to

separate subpoenas for substantially the same information—first for information relating to Plaintiff's individual claims and second for the class members' claims. And given that its testimony will likely be necessary, LendingTree may be subjected to multiple depositions as well. Conversely, because there is no barrier to filing a motion for summary judgment, Freeway is free to seek discovery on its consent defense and file a motion for summary judgment as soon as practicable. And if it were to find evidence that Plaintiff, herself, submitted the lead (it won't), it would certainly have a strong basis to seek a stay of further discovery.

In the end, while Freeway attempts to paint—absent any evidence—Plaintiff as a "serial" litigator that utilized a Virtual Private Network to manufacture this case (which is completely untrue), it fails to take any accountability for its own actions that led to this case. Indeed, it accepted two obviously fraudulent leads that emanated from two separate, foreign IP Addresses. And rather than recognize the obvious fraud, it recklessly accepted the leads and placed unsolicited telemarketing calls in violation of the TCPA. Now that a lawsuit has been filed, Freeway takes the position that the leads must be investigated prior to the commencement of class discovery (an investigation that should have taken place at the time the leads were received). But bifurcating discovery will only serve to delay the case. The Court should therefore deny Freeway's request to phase discovery.

Instead, the Court should enter an order permitting discovery to proceed with respect to both class certification and merits issues for a period of ten (10) months. The first eight (8) months will be devoted to written and oral fact discovery. The final two (2) months of this period will be devoted to experts. Following the close of this initial ten (10) month discovery period, the parties will brief class certification. Following a ruling on class certification the Court would hold a subsequent case management conference and establish a schedule for the remainder of the case, including a period for any remaining merits-based discovery, and dates for summary judgment briefing, pre-trial conferences, and the trial.

Plaintiff proposes the following discovery schedule:

| Event | Proposed Deadlines |
|---|---|
| Motion to Amend Pleadings and/or Add Parties | June 6, 2023 |
| Complete Fact Discovery | October 6, 2023 |
| Plaintiff's Expert Disclosures Due | October 20, 2023 |
| Defendant's Expert Disclosures Due | November 3, 2023 |
| Rebuttal Expert Disclosures Due | November 17, 2023 |
| Complete Expert Discovery | December 6, 2023 |
| Engage in Good Faith Settlement Discussions | December 6, 2023 |
| Plaintiff to File Motion for Class Certification | January 5, 2024 |
| Defendant to File Opposition to Class Certification | January 26, 2024 |
| Plaintiff to File Reply ISO Motion for Class Certification | February 9, 2024 |
| Subsequent Case Management Conference | To be set after a ruling on class certification |
| File Dispositive Motions | TBD |

Defendant's Position:  Defendant disputes Plaintiff's statement above.  Defendant has provided evidence to her counsel indicating that the two leads at issue are legitimate, reflect addresses which public records show are associated with Plaintiff, and were likely generated by Plaintiff or someone acting at her direction using a VPN service provider.

Plaintiff is simply ignoring this evidence, in order to keep up her ruse that the leads are "fake"—a refrain that serial TCPA plaintiffs who fabricate claims often repeat when presented with evidence of consent. Indeed, as noted in Section 3 above, one of the two leads at issue was generated <u>directly on Freeway's website</u> and was a result of a Google search for affordable auto insurance. No third party was involved and that lead cannot possibly be "fake." That the IP addresses connect from offshore locations[5] simply shows that Plaintiff is using a VPN or similar software to mask her identity (in fact, the IP addresses trace directly back to two VPN service providers). That another lead was generated 19 minutes later is simply the result of the Google search performed—*i.e.,* the search that lead to Freeway's website also leads to Quote Wizard's and after Plaintiff completed Freeway's form, she filed out another to maximize her chances of getting called. That Freeway will need discovery on all devices in her household is necessitated by Plaintiff's denials—*i.e.,* if she didn't personally visit the sites, someone did so for her.

  In sum, while Plaintiff disputes the leads' legitimacy and ignores the evidence, all this shows precisely why discovery should be bifurcated in this case, so that the parties can resolve this hotly-disputed case-dispositive issue before wasting time on any other discovery (particularly expensive class discovery) that would be mooted if (and indeed when) Defendant proves that Plaintiff provided her consent for the at-issue calls.

  Accordingly, Defendant believes that phased/bifurcated discovery is necessary and appropriate in this case for the sake of judicial and party economy, and requests that the Court bifurcate individual and class discovery according to the proposed schedule below, so that the Court and parties can first focus on Plaintiff's individual claims against Defendant before addressing much broader (and possibly mooted, should Defendant prevail on summary judgment) class certification issues. Again, the evidence gathered and shared with Plaintiff's counsel to date tends to show that Plaintiff is manufacturing a TCPA lawsuit for personal gain, raising threshold questions on her standing to bring suit

---

[5] The IP of one the two leads traces back to Canada, not Mexico as Plaintiff represents.

and the merits of her claim, as well as her ability to serve as a class representative. The discovery would focus on determining how Plaintiff accomplished this, which would necessitate extensive third party discovery (including subpoenas to foreign VPN and internet service providers) as well as inspection of all electronic devices to which Plaintiff or members of her household had access.

Defendant believes that bifurcating discovery in this manner will be more efficient and cost-effective, given that if Plaintiff's individual claim can be disposed of summarily, it would dispose of this case and obviate the need for costly and time-consuming class discovery and related motion practice, of which Defendant will bear most of the burden. If, and after, dispositive motions are filed and decided on the merits as to Plaintiff's individual claims (and should the case not be disposed of summarily), Defendant proposes that class discovery then proceed.

Courts in the Ninth Circuit and elsewhere routinely bifurcate discovery in this fashion, particularly in TCPA cases. *See, e.g., Durazo v. Time Warner Cable LLC*, 2011 WL 13217222, at *1 (C.D. Cal. Apr. 20, 2011) (noting bifurcated discovery); *Deleon v. Time Warner Cable LLC,* 2009 WL 10674767, at *2–3 (C.D. Cal. Nov. 2, 2009) (granting motion to bifurcate individual and class discovery); *Physicians Healthsource, Inc. v. Janssen*, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate discovery in TCPA class action with an initial phase focused on whether the subject communications were actionable under the TCPA, reasoning that resolution of that "narrow, potentially dispositive issue" could obviate the need for costly class discovery); *Leschinsky v. Inter–Continental Hotels Corp.*, 2015 WL 6150888, at *1 (M.D. Fla. Oct. 15, 2015) (granting motion to bifurcate and initially limiting discovery to whether the calls the named plaintiff received were dialed manually and how many calls she received); *Katz v. Liberty Power Corp.*, LLC, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) (granting motion to bifurcate in TCPA case, noting that "the need for class discovery may be eliminated if [defendant] is able to demonstrate that all of the named Plaintiffs lack viable individual claims"); *Mantha v. QuoteWizard.com, LLC*, 2020 WL 4369701, at *3 (D. Mass.

July 30, 2020) (bifurcating discovery in two phases, with first devoted to plaintiff's individual TCPA claims and the second to class discovery); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (granting defendant's motion to bifurcate discovery in TCPA case, noting "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive."); *Osidi v. Assurance IQ, LLC,* 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) ("The Court agrees that, in this matter where Defendant has raised potentially dispositive issues, it would be prudent to 'test[ ] the merits of Plaintiff['s] allegations before engaging in costly class discovery.'"). This Court should too.

Accordingly, Defendant proposes the following phased/bifurcated discovery schedule, which will be more efficient for the parties and Court alike:

(a) Discovery as to the merits of Plaintiff's claims (including related third party discovery) to proceed for a period of 120 days after entry of the Court's scheduling order;

(b) Opening summary judgment motions as to the merits of Plaintiff's individual claims be due no later than thirty (30) days thereafter (though summary judgment motions may be filed at any point prior to this deadline);

(c) Oppositions to summary judgment due thirty (30) days after service of opening motions; and

(d) Reply briefs in support of summary judgment due twenty-one (21) days after service of oppositions.

Defendant further proposes the Court set a further case management conference, at the Court's convenience, to occur after the Court has ruled on summary judgment motions relating to Plaintiff's individual claims to set, if necessary, a schedule for class claim discovery.

**16.   Whether a jury trial has been requested and whether the request for a jury trial is contested (if the request is contested, briefly set forth the reasons):**

Plaintiff has demanded a jury trial. Defendant does not contest the demand.

**17.    The prospects for settlement, including any request of the Court for assistance in settlement efforts:**

The Parties do not request Court assistance with settlement talks at this time. The Parties reserve the right to request a judicial settlement conference at a later time.

**18.    Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.**

There are no additional matters need to be addressed at this time.

Dated: February 9, 2023

**BRENDA WHITTAKER**, individually and on behalf of all others similarly situated,

By: */s/ Taylor T. Smith*
One of Plaintiff's Attorneys

Penny L. Koepke
pkoepke@hoalaw.biz
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

**pro hac vice*

*Counsel for Plaintiff and the Putative Classes*

| | |
|---|---|
| Dated: February 9, 2023 | By: */s/ A. Paul Heeringa* |

**MANATT, PHELPS & PHILLIPS, LLP**
Christine M. Reilly (Admitted *Pro Hac Vice*)
A. Paul Heeringa (Admitted *Pro Hac Vice*)
2049 Century Park East
Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
Email: creilly@manatt.com
Email: pheeringa@manatt.com


**BERGIN, FRAKES, SMALLEY & OBERHOLTZER, PLLC**
Brian M. Bergin (AZ Bar No. 016375)
Brent Demmitt (AZ Bar No. 033820)
4343 East Camelback Road, Suite 210
Phoenix, Arizona 85018
Telephone: 602.888.7855
Email: bbergin@bfsolaw.com
Email: bdemmitt@bfsolaw.com

*Local Counsel for Manatt, Phelps & Phillips, LLP*

**Attorneys for Defendant Freeway Insurance Services America, LLC**

18

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on February 9, 2023.

*/s/ Taylor T. Smith*